The Memorandum Decision below is hereby signed.

Dated: September 3, 2008.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ZIAD AKL, | ) | Case No. 07-00256 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| VIRGINIA HOSPITAL CENTER-ARLINGTON HEALTH SYSTEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 07-10026 |
| | ) | |
| ZIAD AKL, | ) | **For Publication in West's** |
| | ) | **Bankruptcy Reporter** |
| Defendant. | ) | |

MEMORANDUM DECISION REGARDING MOTIONS
<u>RELATING TO THE DEFENDANT'S PURSUIT OF A COUNTERCLAIM</u>

In litigation pursued by the debtor, Ziad Akl, against it
elsewhere, Virginia Hospital Center-Arlington Health System (the
"Hospital"), obtained judgments against Akl for attorneys' fees
it incurred in that litigation.  Akl then commenced the
bankruptcy case, under chapter 7 of the Bankruptcy Code (11
U.S.C.), within which this adversary proceeding is pending.  The
Hospital filed this adversary proceeding against him to obtain a

determination that the debts owed to it by Akl were
nondischargeable under 11 U.S.C. § 523(a)(6) as debts for willful
and malicious injury by Akl to the Hospital.  When the court
denied the Hospital's motion for summary judgment, the Hospital
moved to dismiss this adversary proceeding.  Akl opposed the
motion to dismiss, and filed a motion for leave to file a
counterclaim asserting claims for abuse of process, malicious
prosecution, and intentional infliction of emotional distress,
all based on the Hospital's having commenced this adversary
proceeding against him.  The Hospital has opposed Akl's motion
and moved in the alternative to dismiss the counterclaim for
failure to state a claim upon which relief can be granted.  For
the reasons that follow, I will deny Akl's motion for leave to
file a counterclaim and grant the Hospital's motion to dismiss
the adversary proceeding.

I

Although neither party has argued that the court lacks
subject matter jurisdiction, if leave were granted to permit Akl
to pursue the counterclaim, that counterclaim would have to be
dismissed if the court lacks subject matter jurisdiction to hear
the counterclaim.  Because I conclude that subject matter
jurisdiction would be lacking under 28 U.S.C. § 1334(b), I will
deny the motion for leave to assert the counterclaim.

On almost identical facts, the court in <u>Salin Bank and Trust</u>
<u>Co. v. Seybold (In re Seybold)</u>, Case No. 07-11441, Adv. No. 07-
1255, 2008 WL 1321878 (Bankr. N.D. Ind. Mar. 11, 2008), concluded
that subject matter jurisdiction was lacking over a counterclaim
which asserted a claim for abuse of process based on the filing
of the complaint commencing the adversary proceeding which had
sought a determination of nondischargeability.  I adopt that
decision's analysis of its lack of jurisdiction under 28 U.S.C. §
1334(b) as being equally applicable here, but elaborate on its
discussion of "arising in" jurisdiction.

Akl concedes that his claims arise under state law, not
under the Bankruptcy Code.  Accordingly, there is no "arising
under title 11" jurisdiction over his counterclaim.  In addition,
Akl's counterclaim arose postpetition and is therefore not
property of the estate.  A recovery on that counterclaim would
not affect the administration of the estate.  There is thus no
"related to" jurisdiction even though the counterclaim raises
claims by the debtor (as opposed to a stranger to the bankruptcy
case), and even though the conduct he complains of was directed
against him while he was a debtor in a bankruptcy case.  <u>See</u>
<u>Cmty. Bank of Homestead v. Boone (In re Boone)</u>, 52 F.3d 958, 960
(11th Cir. 1995).  The only issue is whether Akl's counterclaim
would fit within "arising in" jurisdiction as a proceeding that
goes to the core of bankruptcy administration.

3

A.

As explained in <u>Wood v. Wood (In re Wood)</u>, 825 F.2d 90, 92 (5th Cir. 1987):

> Legislative history indicates that the phrase "arising under title 11, or arising in or related to cases under title 11" was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts.  Congress was concerned with the inefficiencies of piecemeal adjudication of matters affecting the administration of bankruptcies and intended to give federal courts the power to adjudicate all matters having an effect on the bankruptcy.

(Footnotes omitted.)  Akl's counterclaim would have an effect on him, but not on the bankruptcy case, and the counterclaim does not entail court-approved professionals of the estate over whom this court has special bankruptcy supervisory powers such as to constitute a matter affecting the administration of bankruptcy cases.  Thus, the counterclaim does not "arise in" the bankruptcy case or otherwise fit within any of the categories of bankruptcy jurisdiction over matters having an effect on the bankruptcy.

B.

That this is the proper interpretation of § 1334(b) is demonstrated by a consideration of the same term ("arising in") used in 28 U.S.C. § 157(b)(1) in describing "core proceedings" that a judge may hear and decide.  Upon a referral from the district court, § 157(b)(1) authorizes the bankruptcy judge in the bankruptcy case to hear and determine "all core proceedings arising under title 11, or arising in a case under title 11,"

4

but, without the consent of the parties under 28 U.S.C. § 157(c), the bankruptcy judge may not both hear and determine a matter that is not a core proceeding and that is only an otherwise "related to" proceeding.

"Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings [that are only otherwise] 'related to' a case under title 11 are referred to as 'non-core' proceedings." In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2004). There theoretically could be a proceeding that arises in the bankruptcy case in the sense of being temporally related to the pendency of the bankruptcy case but that is not of a core nature because it does not go to the heart of bankruptcy administration. But I nevertheless think that Combusion Engineering got it right: if a proceeding arises during the pendency of a bankruptcy case but does not go to the heart of bankruptcy administration, it cannot be said to "arise in" the bankruptcy case in a functional sense.

This interpretation of "arising in" jurisdiction is consistent with the conclusion in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), that the adjudication of claims against third parties (as opposed to claims against the estate) asserting state-created private rights is not at the core of the federal bankruptcy power. Consistent

5

with <u>Marathon Pipeline</u>, for an action to be one that "arises under" the Bankruptcy Code or "arises in" the bankruptcy case and thus to constitute a core proceeding, it must be "an action that has as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement." <u>Acolyte Elec. Corp. v. City of New York</u>, 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986). <u>See also</u> <u>Manshul Constr. Corp. v. Schulman (In re Manshul Constr. Corp.)</u>, 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998).[1]

In other words, "arising in" proceedings are those that occur in the case and that somehow have an effect on the administration of the panoply of rights and duties under the bankruptcy laws.  As explained in <u>In re Wood</u>, 825 F.2d at 96-97:

---

[1] Nevertheless, the proceeding might be "related to" the case, as where a monetary recovery might be a source for funding a chapter 11 or 13 plan, but as already noted, Akl's claim does not meet the test for being "related to" the case: it has no impact on the administration of the case.

[S]ection 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

     . . .  **The meaning of "arising in" proceedings** is less clear [than the meaning of "arising under title 11" proceedings], but **seems to be a reference to those "administrative" matters that arise** *only* **in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy. . . .**

     **If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt.** If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

     Finally, the interpretation of core proceeding based on its equation with "arising under" and "arising in" proceedings comports with the interpretation suggested by <u>Marathon</u> [referring to <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)].  Justice Brennan's description of "core" matters parallels that of matters "arising under" title 11--matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with "arising in" proceedings--matters that could arise only in bankruptcy.

(Footnotes omitted.)(Emphasis added; italics in original.)

In other words, an "arising in" proceeding is one that must not only arise from events in the bankruptcy case but that by its nature is of an "administrative" character because it requires a disposition in the bankruptcy case in order for the bankruptcy case to be administered.  The court in <u>In re Wood</u> elaborated in a

way supporting this conclusion when it contrasted the proceeding

at issue to an objection to a proof of claim (which requires an

order in the bankruptcy case so that the trustee knows how much

to pay on the claim):

> [A] claim filed against the estate is a core proceeding
> because it could arise only in the context of
> bankruptcy.  Of course, the state-law right underlying
> the claim could be enforced in a state court proceeding
> absent the bankruptcy, but the nature of the state
> proceeding would be different from the nature of the
> proceeding following the filing of a proof of
> claim. . . . The essential issue in the proceeding [the
> plaintiff's claim that the debtor received a
> disproportionate distribution as a shareholder from a
> corporation in which he was a shareholder] is whether
> the defendants are liable to the plaintiff under state
> law.  **The suit does not raise as primary issues such
> matters as dischargeability, allowance of the claim, or
> other bankruptcy matters.**

825 F.2d at 97-98 (footnotes omitted)(emphasis added).

Proceedings that do not concern the administration of the

case thus are not proceedings "arising in" the case.  Compare

United States Trustee v. Gryphon at the Stone Mansion, Inc., 166

F.3d 552, 556 (3d Cir. 1999) ("an action for [United States

Trustee's] fees pursuant to § 1930(a)(6) applies only in chapter

11 cases, during the pendency of the case" and thus met the In re

Wood test for "arising in" jurisdiction of having no existence

outside of the bankruptcy case) with Stoe v. Flaherty, 436 F.3d

209, 218 (3d Cir. 2006) (action against officers of debtor

corporation for failing, during bankruptcy case, to pay wages was

not an "arising in" proceeding: "category is illustrated by such

things as 'allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts. . . .'" (internal citations omitted)).  Akl's counterclaim is not an administrative matter whose adjudication is necessary to the administration of the bankruptcy case, and thus does not "arise in" the bankruptcy case.

Some courts have held that Congress intended for core jurisdiction to be interpreted more broadly than the interpretation of core jurisdiction in In re Wood, such that the enforcement of certain postpetition contracts should be treated as a core proceeding.  See, e.g., In re Ben Cooper, 896 F.2d 1394, 1400 (2nd Cir. 1990).  But that broader interpretation has only been in the context of postpetition contracts with a trustee (or a debtor-in-possession exercising the powers of a trustee) as an officer of the bankruptcy court, with those courts emphasizing that the trustee's (or the debtor in possession's) enforcement of such contracts is integral to the administration of the estate.  Id. at 1399, discussing In re Arnold Print Works, 815 F.2d 165, 169-70 (1st Cir. 1987).  Even under In re Wood, enforcement of such contracts would fall within the "related to" jurisdiction of the district court.  Even if the broader interpretation were followed here, it would not alter my conclusion that subject

matter jurisdiction is lacking: Akl's claims have nothing to do with administration of the estate, and thus his counterclaim is neither a core proceeding nor a non-core related proceeding.

C.

That the Hospital's allegedly abusive dischargeability complaint was necessarily filed in the bankruptcy case by reason of 11 U.S.C. § 523(c) does not mean that the counterclaim (asserting that the Hospital's complaint was a wrongful act inflicting injury on Akl) is one that could only exist inside the bankruptcy case, and that it is one "arising in" the bankruptcy case. Many a wrongful act could occur incident to an event that only takes place in bankruptcy but that would not make a resulting claim one that could only exist in a bankruptcy case and that "arises in" the bankruptcy case. The wrongful act could just as well have taken place in a nonbankruptcy setting, and the claim does not arise in the bankruptcy case in the functional sense (required for § 1334(b) "arising in" jurisdiction to exist) of affecting the administration of the case.

In other words, "arising in" jurisdiction is not established by the mere coincidence that the wrongful conduct took place in a bankruptcy case. See Stoe, 436 F.3d at 218 (rejecting reasoning of the district court that because the debtor stopped making payments as a consequence of the bankruptcy, the claim would not exist, but for the bankruptcy case, and stating that "claims that

'arise in' a bankruptcy case are claims that by their nature, not
their particular factual circumstance, could only arise in the
context of a bankruptcy case."); Torkelsen v. Maggio (In re Guild
And Gallery Plus, Inc.), 72 F.3d 1171 (3d Cir. 1996).  In
Torkelsen, a claim against a bankruptcy trustee for damaging non-
estate property (held by him by way of bailment) was held not to
"arise in" the bankruptcy case.  The claims against the trustee
in Torkelsen arose only because of acts the trustee committed as
a bankruptcy trustee, but the claims would have an independent
existence outside of bankruptcy, and the adjudication of those
claims would have no impact on the administration of the case.

     "The courts and commentators using the 'no existence outside
of the bankruptcy' formulation seem to be referring to
proceedings that by their nature cannot exist outside of
bankruptcy, and not merely to actions that, as a factual matter,
have their origins in events occurring during a bankruptcy
proceeding."  Winstar Holdings, LLC v. Blackstone Group L.P., No.
07 Civ. 4634, 2007 WL 4323003, at * 3 (S.D.N.Y. Dec. 10, 2007).
See also Marotta Gund Budd & Dzera LLC v. Costa, 340 B.R. 661,
666-67 (D.N.H. 2006) ("while the defendants may be correct that
they could not have made the allegedly defamatory statements
about the plaintiffs' management of the debtors had the debtors
not declared bankruptcy in the first place, this point is
irrelevant to whether the defamation action arises in the

11

bankruptcy case within the meaning of section 1334(b).  Like the plaintiff's action for missed severance payments in Stoe, there is nothing about the nature of a defamation action that limits its existence to bankruptcy proceedings.");  In re Boone, 52 F.3d at 960;  Goldstein v. Marine Midland Bank, N.A. (In re Goldstein), 201 B.R. 1, 5 and 5 n.3  (Bankr. D. Me. 1996) (no "arising in" jurisdiction because "neither cause of action is based upon rights that cannot be pursued outside the bankruptcy context" and "[the] 'arising in' limitation on bankruptcy jurisdiction has substantive, rather than merely temporal, content." (Citation omitted.)).

The bankruptcy case may have been the setting within which the Hospital acted in a manner allegedly designed to harm Akl, but the claims based on those acts would exist whether the acts took place in the bankruptcy case or outside of the bankruptcy case, and would have no effect on the administration of the case. Akl's claims would thus exist independent of the bankruptcy environment.  Akl has only demonstrated that the allegedly abusive conduct occurred in the bankruptcy case, but such a "coincidental relationship" does not suffice to establish "arising in" jurisdiction under § 1334(b).  See Valley Historic

Ltd. P'ship v. Bank of New York, 486 F.3d 831 (4th Cir. 2007).[2]

### D.

A close scrutiny of the causes of action asserted by Akl demonstrates that they entail harm inflicted beyond the confines of the adversary proceeding itself, and have only an incidental, collateral relationship to the adversary proceeding, a relationship having nothing to do with the administration of the bankruptcy case.  Akl claims that the Hospital's pursuit of the adversary proceeding was designed:

> to force Akl to withdraw live claims that Akl had against the Hospital and others in other courts, to divert Akl's resources from other judicial proceedings (in which the Hospital was either a defendant or had a stake in defending against claims brought by Akl) in order to obtain rulings against Akl, to inflict severe financial injury on Akl by forcing him to expend a significant amount of time preparing for the defense against the adversary proceeding rather than earning a living, and to deprive Akl of his property and liberty rights to pursue his chosen profession . . . .

Def.'s Reply to Pl.'s Opp'n to Mot. at 2.  It is thus

---

[2]  The debtor in Valley Historic held a claim against a bank for tortious interference with a contract that occurred while it was a debtor in possession exercising the powers of a trustee. The debtor asserted that claim as a setoff against the bank's secured claim.  The debtor argued that there was "arising in" jurisdiction under § 1334(b) because the tortious interference complicated the administration of the bankruptcy case.  The Court of Appeals rejected that argument, reasoning that it is insufficient "to establish 'arising in' jurisdiction that a claim, like the Debtor's tortious interference claim, arises *during* the pendency of the Chapter 11.  Here, the Debtor's claims bear only a coincidental relationship to the Debtor's bankruptcy case.  They would have existed whether or not the Debtor filed bankruptcy."  Valley Historic, 486 F.3d at 836 (italics in original).

interference with Akl's conduct and rights outside of the bankruptcy case that is the foundation of his claims.  This is demonstrable as to each of Akl's claims:

- The damage for an abuse of process claim is necessarily damage beyond the confines of the offending proceeding. See Whelan v. Abell, 953 F.2d 663, 670-71 (D.C. Cir. 1992) (abuse of process claim entails invocation of legal process, such as filing a lawsuit, to accomplish "collateral damage (apart from the litigation itself)");[3] Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980) (abuse of process claim requires "that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge," such that filing a claim to coerce a settlement does not constitute an abuse of

---

[3]  Akl himself recognizes that "[t]he damages [allegedly] occasioned were *collateral* to the adversary proceeding . . . ." Def.'s Reply to Pl.'s Opp'n to Mot. at 11 (italics in original).

14

process).[4]

- Similarly, a malicious prosecution claim requires a showing of "special damage" beyond the damages arising in the proceeding itself. <u>See</u> <u>Morowitz</u>, 423 A.2d at 198 (malicious prosecution claim requires a showing of "special injury" and injuries ordinarily occasioned by litigation do not constitute special injury).

- Finally, Akl's remaining claim is for intentional infliction of emotional distress, and Akl does not dispute that such a cause of action requires a showing of "extreme and outrageous conduct." The "extreme and outrageous conduct" alleged here is not the mere filing of the adversary proceeding itself (which viewed in isolation was not extreme or outrageous conduct because, after all, Fed. R. Bankr. P. 9011 can be invoked to address baseless filings) but the Hospital's

_____

    [4] Although I do not reach the Hospital's argument that Akl has failed to state a claim upon which relief can be granted, I do question whether new litigation brought to fight litigation elsewhere (by distracting the opponent or depriving him of resources in the litigation elsewhere or coercing a settlement) can ever constitute an "end not contemplated in the regular prosecution of the [new litigation]" within the meaning of <u>Morowitz</u>. Had the new litigation here (the Hospital's adversary proceeding) been pursued for such purposes as a counterclaim in the litigation pending elsewhere, <u>Morowitz</u> would appear to treat such a counterclaim for those purposes as not giving rise to a claim for abuse of process. Similar reasoning applies to Akl's claim for malicious prosecution and for intentional infliction of emotional distress.

causing of the collateral consequences recited above.
Akl's claims did not "arise in" the bankruptcy case because they
are claims only incidentally related to the bankruptcy case,
having nothing to do with administering the panoply of rights and
duties under the bankruptcy laws.  Akl's claims do not depend on
the fact that the adversary proceeding was pursued in a
bankruptcy case, and thus the claims are based on rights that
would exist independent of the bankruptcy environment.  They thus
did not "arise in" the bankruptcy case within the meaning of 28
U.S.C. § 1334(b).

                              E.

     The parties have brought to the court's attention decisions
that they contend are relevant to the "arising in" question.
Those decisions are distinguishable, and serve to demonstrate the
correctness of the foregoing analysis.  The decisions principally
involve recovery for the benefit of the estate against court-
approved professionals or a recovery against a debtor's counsel
for malpractice in representing the debtor in the bankruptcy
case.  Those professionals' compensation are subject to the
supervision of the bankruptcy court, supervision which
necessarily entails addressing state law claims against the
professional for professional malfeasance.  Here, in contrast,
Akl is not suing a professional subject to such supervision but
instead a creditor who sued him for a nondischargeability

                              16

determination.

Sanders Confectionary Prods., Inc. v. Heller Fin., Inc., 973
F.2d 474, 483 n.4 (6th Cir. 1992), held that claims against a
bankruptcy trustee for the trustee's mishandling of the
administration of the estate were "arising in" claims: a court's
supervision of a trustee's administration of the estate is a key
bankruptcy function and extends to hearing state law claims
arising from misconduct in administering the estate.  Similarly,
Walsh v. Nw. Nat'l Ins. Co. of Milwaukee (In re Ferrante), 51
F.3d 1473 (9th Cir. 1995), involved a complaint by a bankruptcy
trustee against a surety on a surety bond issued to a predecessor
trustee who failed to account for and embezzled estate funds.[5]

The seminal decision cited by the parties, Southmark Corp.
v. Coopers & Lybrand, 163 F.3d 925 (5th Cir.), cert. denied, 527
U.S. 1044 (1999), stands for the now unremarkable proposition
that a malpractice action by a debtor in possession, vested with
the powers of a trustee under 11 U.S.C. § 1107(a), against an

---

[5]  The proceeding was deemed core:

this case evokes the Bankruptcy Act's imposition of
duties on trustees to administer estate property and a
surety's liability on its bond for the benefit of the
estate . . ., [and] it involves the very bankruptcy
process itself . . ., the fidelity of those who are
entrusted with assets.

Walsh, 51 F.3d at 1476.

accountant with respect to services provided for the estate in a
case under chapter 11 of the Bankruptcy Code is a proceeding that
"arises in" the bankruptcy case.  The professional malpractice
claims were "inseparable from the bankruptcy context," being
claims for breaches of fiduciary duty relating to a contract
approved by the bankruptcy court, and being against court-
appointed professionals who were subject to bankruptcy court
superintendence.  <u>Southmark</u>, 163 F.3d at 931.  "Award of the
professionals' fees and enforcement of the appropriate standards
of conduct are inseparably related functions of bankruptcy
courts."  <u>Id.</u>  The court in <u>Southmark</u> concluded that "[a]
malpractice claim like the present one inevitably involves the
nature of the services performed for the debtor's estate and the
fees awarded under superintendence of the bankruptcy court; it
cannot stand alone."  <u>Id.</u>[6]  In contrast, claims like Akl's under
state law for infliction of mental distress, abuse of process and
malicious prosecution are not "inseparably related [to] functions
of the bankruptcy courts."

_____

[6]  <u>Geruschat v. Ernst & Young LLP (In re Seven Fields Dev.
Corp.)</u>, 505 F.3d 237 (3d Cir. 2007), merely followed <u>Southmark</u>.
Although the claims were pursued against the accounting firm
after the debtor's plan was confirmed, the claims arose from
representation of the debtor in possession in its chapter 11
reorganization case pre-confirmation, and thus were claims
"arising in" the case.  505 F.3d at 260.

Similarly, <u>Grausz v. Englander</u>, 321 F.3d 467 (4th Cir. 2003), concluded that malpractice claims against an attorney for providing the debtor negligent advice "arise in" a bankruptcy case as the claims concerned the conduct of the attorney in the bankruptcy case itself and would have had no practical existence but for the bankruptcy case. <u>Id</u>. at 471-72.[7]  The Bankruptcy Code expressly recognizes the court's power to address the reasonableness of a debtor's attorney's fees, 11 U.S.C. § 329(b), and the alleged acts of malpractice related to mishandling of the bankruptcy case itself, and thus, as in the case of malpractice claims against professionals of the estate, could arise only in a bankruptcy case. <u>See In re Seven Fields Dev. Corp.</u>, 505 F.3d at 262 (viewing <u>Grausz v. Englander</u> as similar to <u>Southmark</u>).

In contrast, Akl's claims do not entail the court's inherent supervisory power regarding such professionals.  Moreover, under <u>In re Wood</u>, 825 F.2d at 96, the function of "arising in" jurisdiction is to address such "administrative matters."  Akl's claims do not raise issues necessary to be adjudicated in order to complete administration of the bankruptcy case, and thus do not "arise in" the bankruptcy case based on the mere fortuity

---

[7]  <u>Iannochino v. Rodolakis</u>, 242 F.3d 36 (1st Cir. 2001), and <u>D.A. Elia Constr. Corp. v. Damon & Morey, LLP</u>, Case No. 07-CV-143A, 2008 WL 907366, at *3 (W.D.N.Y. Mar. 31, 2008), similarly involved claims for an attorney's malpractice in representing a debtor in a bankruptcy case.

that the process invoked occurred in the bankruptcy case.

F.

The court does, however, have "arising in" jurisdiction over
any request for sanctions for any abusive filing, whether by the
plaintiff or the defendant, to the extent that federal law
provides for sanctions as under Federal Rule of Bankruptcy
Procedure 9011 or 11 U.S.C. § 523(d).  To the extent that federal
law authorizes sanctions to police misconduct in litigation, that
is part of the bankruptcy court's jurisdiction.  Akl's claims are
not of that character, being strictly state law claims.

II

An alternative ground may require denial of Akl's motion for
leave to file his counterclaim even if his claims were to fall
within the court's "arising in" jurisdiction under 28 U.S.C. §
1334(b).  Akl's counterclaim asserts claims based on state law
that are preempted by the Bankruptcy Code.  See MSR Exploration,
Ltd. v. Meridian Oil, Inc., 74 F.3d 910 (9th Cir. 1996)
(Bankruptcy Code preempted state law claims for malicious
prosecution based on the defendants' filing of proofs of claim in

20

the bankruptcy case).[8]   The jurisdiction over the Hospital's
dischargeability complaint was exclusive jurisdiction by reason
of 11 U.S.C. § 523(c), and the reasoning in MSR Exploration would
require the court to treat that exclusive jurisdiction over the
Hospital's § 523(c) complaint as preempting Akl's state law
claims.

Akl obtained a discharge under 11 U.S.C. § 727, which gave
rise to an injunction in his favor under 11 U.S.C. § 524 barring
collection of debts as a personal obligation other than those
debts excepted from discharge under 11 U.S.C. § 523.   Akl's
claims are based on the Hospital's having pursued an adversary
proceeding to determine that the debt is nondischargeable under
11 U.S.C. § 523(a)(6).   Congress required that such adversary
proceedings be tried in the bankruptcy case pursuant to 11 U.S.C.
§ 523(c) (and such proceedings have been referred by local rule

---

[8]   See also Eastern Equip. and Servs. Corp. v. Factory Point
Nat'l Bank, 236 F.3d 117 (2d Cir. 2001) (Bankruptcy Code
preempted debtors' state tort law claims, including claims for
intentional or negligent infliction of emotional distress, abuse
of process and malicious prosecution, based upon creditors'
alleged violations of automatic stay);   Gonzales v. Parks, 830
F.2d 1033 (9th Cir. 1987) (state court lacked jurisdiction over
claim that filing of a bankruptcy petition was an abuse of
process);   Miles v. Okun, 430 F.3d 1083 (9th Cir. 2005)
(Bankruptcy Code preempted abuse of process, emotional distress,
and other state law claims asserted by alleged involuntary
debtor's wife and children against petitioning creditors);
Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000)
(unjust enrichment claim based on soliciting reaffirmation
agreement in alleged violation of automatic stay preempted by
Bankruptcy Code).

in this district (as in others) to the bankruptcy court).  As an
adversary proceeding that may be pursued only in the bankruptcy
case, the proceeding is part of the case over which the district
court is granted exclusive jurisdiction under 28 U.S.C. §
1334(a).

Congress has also addressed the question of sanctions in
proceedings governed by § 523(c): when a debtor defeats a certain
type of claim under § 523(a)(2), the court may award attorney's
fees if the terms of 11 U.S.C. § 523(d) are met.  It did not
choose in § 523(d) to provide for a recovery of attorney's fees
when a debtor prevails in a proceeding based on § 523(a)(6).

Sanctions for an abusive complaint under § 523(a)(6) are
available, however, under federal law in certain circumstances,
for example, pursuant to F. R. Bankr. P. 9011, but Congress has
permitted recovery of actual damages based on misconduct in a
bankruptcy case in only certain matters.  See, e.g., 11 U.S.C. §§
303(i) (actual damages relating to certain improper involuntary
petitions) and 362(k) (formerly § 362(h) prior to 2005 amendments
to the Bankruptcy Code) (actual damages for certain violations of
automatic stay).  Congress has given no indication that it
intended the remedies available under federal law for improper
pursuit of a complaint under § 523(a)(6) to be supplemented based
on state law causes of action for malicious prosecution, abuse of
process, or intentional infliction of emotional distress.

22

Under the reasoning of <u>MSR Exploration</u>, Akl's claims, even if they are treated as "arising in" the bankruptcy case, would be treated as preempted by the Bankruptcy Code.  Akl, however, has not had an opportunity to attack the reasoning of <u>MSR Exploration</u> or to demonstrate error in the foregoing conclusion that the reasoning of that decision would logically apply here.  If "arising in" jurisdiction were found to exist in this case, I would require Akl to demonstrate why his counterclaim ought not be dismissed pursuant to the reasoning of <u>MSR Exploration</u>.

## III

Pursuant to the foregoing, orders follow denying Akl's motion for leave to file a counterclaim and dismissing this adversary proceeding.  The parties shall bear their own costs as the Hospital's complaint is being dismissed and, correspondingly, Akl's pursuit in this court of a counterclaim is being denied.

[Signed and dated above.]

Copies to: All counsel of record; Office of the United States Trustee.