The document below is hereby signed.

Signed: June 14, 2011



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ZIAD AKL, | ) | Case No. 07-00256 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| VIRGINIA HOSPITAL CENTER – | ) | |
| ARLINGTON HEALTH SYSTEMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 07-10026 |
| | ) | |
| ZIAD AKL, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

MEMORANDUM DECISION RE MOTION OF VIRGINIA
HOSPITAL CENTER-ARLINGTON HEALTH SYSTEMS AND
<u>PATRICK POTTER FOR SUMMARY JUDGMENT AS TO SANCTIONS</u>

This addresses the Motion of Virginia Hospital Center-

Arlington Health Systems and Patrick Potter ("Respondents") for

Summary Judgment as to Sanctions.  For the reasons that follow, I

will grant the motion.

I

The procedural history underlying the Respondents' motion for summary judgment is as follows.  In 2007, Virginia Hospital System-Arlington Health System (the "Hospital") commenced this adversary proceeding seeking to have certain attorneys' fees awarded to the Hospital by Judge Kendrick of the Circuit Court for the County of Arlington against the debtor, Ziad Akl, declared nondischargeable under § 523(a)(6) of the Bankruptcy Code.

The Hospital's nondischargeability complaint, as pertinent here, set forth the following:

Starting in 2004 and continuing through the petition date, Akl commenced eight lawsuits against the Hospital in connection with the revocation of his medical privileges at the hospital.  Compl. ¶ 6.

As of the filing of the complaint, however, seven of Akl's cases had been dismissed.  Compl. ¶ 7.

In most of these actions the Hospital had "been forced to defend against Dr. Akl's baseless, malicious allegations and claims."  Compl. ¶ 9.

In three consolidated actions in the Circuit Court, the Hospital moved to recover attorneys' fees pursuant to, among other things, Virginia Code § 8.01-271.1, Compl. ¶ 10, Virginia's equivalent of Rule 11 of the Federal Rules of

Civil Procedure.[1]

_____

[1]    Va. Code § 8.01-271.1 provides as follows:

Except as otherwise provided in §§ 16.1-260 and 63.2-1901, every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, and the attorney's address shall be stated on the first pleading filed by that attorney in the action.  A party who is not represented by an attorney, including a person confined in a state or local correctional facility proceeding pro se, shall sign his pleading, motion, or other paper and state his address.

The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  If a pleading or written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.

An oral motion made by an attorney or party in any court of the Commonwealth constitutes a representation by him that (i) to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (ii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanctions, which may include an
[Footnote continues next page]

On October 2, 2006, the Circuit Court signed an order
granting the Hospital's motion which in the first decretal
paragraph provided that "pursuant to the contract entered
into between Plaintiff and Defendant Virginia Hospital
Center-Arlington (the 'Hospital'), Defendant's motion for
costs and reasonable attorney's fees is GRANTED."[2]  Compl.
¶ 12.

Moreover, at the hearing on the Hospital's attorneys'
fees motion, Judge Kendrick of the Circuit Court made a
specific finding that Akl had violated Virginia Code § 8.01-
271.1:

> Virginia Code [8.01-271.1], which was
> designed to protect litigants from the mental
> anguish and the expense of frivolous
> assertions of unfounded factual and legal
> claims[,] against the assertions of claims for
> improper purposes, and to protect courts
> against those who would abuse the litigation
> process, is also a legal and sufficient basis
> to award sanctions against this litigant [Dr.
> Akl].  The Court finds after an exhaust[ive]
> review of this record that he [Dr. Akl], in
> fact, violated the very nature and basis for
> which this code section was designed and

_____

order to pay the other party or parties the amount of the
reasonable expenses incurred because of the filing of the
pleading, motion, or other paper or making of the motion,
including a reasonable attorney's fee.

[2]     That order was subsequently amended to read that "as
noted in this Court's October 2, 2006 Order, pursuant to the
contract entered into between Plaintiff, Ziad Akl, M.D.,
F.A.C.P., and Defendant Virginia Hospital Center-Arlington Health
System, the motion for costs and reasonable attorneys' fees is
GRANTED."

> implemented. . . .  The record should also
> reflect that it is the Court's opinion that
> when you consider the nature of the litigation
> that has gone on with this individual, this
> doctor, and Virginia Hospital Center [VHC],
> that no further lawsuits are going to be filed
> by you [Dr. Akl] in this case, in this Court,
> without this Court's permission.

Compl. ¶ 13 (alterations in complaint).[3]

Akl's conduct constituted a willful and malicious injury to the Hospital or to the Hospital's property, Compl. ¶ 15, and the alleged actions violated § 523(a)(6) of the Bankruptcy Code, Compl. ¶ 16.

Akl timely filed an answer to the complaint and sought to take discovery.  The Hospital filed a motion to quash discovery based on relevance grounds and soon thereafter moved for summary judgment.

### The Hospital's Motion for Summary Judgment on the Nondischargeability Complaint

The Hospital's motion for summary judgment sought to give collateral estoppel effect to Judge Kendrick's sanction award and, on that basis, for this court to determine as a matter of law that the award was nondischargeable.  The motion relied

---

[3]      The portion of Judge Kendrick's oral ruling the Hospital quoted in its complaint omitted a prior sentence which stated, consistent with the Circuit Court's October 2, 2006, written order, that Akl was also liable for attorneys' fees based on a fee shifting provision in a contract between Akl and the Hospital.

principally Judge Kendrick's oral ruling awarding sanctions that

the Hospital quoted in its complaint.  At a hearing on the

motion, I denied summary judgment on the bases that Judge

Kendrick's oral ruling was not his final decision on the

Hospital's attorneys fees motion, and the final order awarding

attorneys' fees did so solely based on Akl's contract with the

hospital:

> In order for collateral estoppel to apply, we have
> to have four elements proven, and one of those is that
> the factual issue must have been essential to the
> judgment in a prior proceeding.  *Loudoun Hopsital Center
> v. Stroube*, 50 Va. App. 478, 492 (2007).
> It wasn't necessary for the Virginia Circuit Court
> to reach the issue of statutory sanctions.  As he noted,
> it was sufficient to rely upon the contract.  He did, in
> his oral ruling, go beyond that and indicate that
> sanctions were appropriate also under the statute, but he
> did not say what part of the award was appropriate under
> that statute.
> When, that -- later that day he signed the judgment
> order, he apparently thought better of what he had said
> at the hearing, and realized that the Virginia statutory
> provision could not be a basis for the entire sanctions
> award, and limited the granting of the motion to the
> contract it had entered into between the parties.  That
> was his last word on the issue, and he decided to limit
> his granting of sanctions pursuant to the contract it had
> entered into between the parties, and did not decided
> that he should additionally mention in the order, that he
> was awarding sanctions pursuant to the Virginia statute.
> So we simply have the judgment that rests upon
> breach of contract or a contractual entitlement to
> attorney's fees and reasonable – and costs, and not a
> judgment that rests upon violation of the Virginia
> statute.
> The Health System alleges that Dr. Akl took an
> appeal in which he flagged the statutory violation as a
> grounds for the Trial Court having awarded sanctions, and
> points to the fact that the Supreme Court of Virginia
> denied review, using language saying that it found no
> reversible error, but the Virginia Supreme Court didn't

say whether it found no reversible error because the
contract provision, standing alone, sufficed to uphold
the judgment, and therefore it was not necessary to
address whether statutory sanctions would have been
appropriate, and it did not address whether statutory
sanctions were appropriate.
      So the Virginia Supreme Court cannot be treated as
having actually addressed the question of statutory
sanctions.

Tr. 3/12/2008 hearing at 63-65 (Dkt. No. 186).

After I denied its motion for summary judgment, the Hospital

moved to dismiss the adversary proceeding. Prior to ruling on

the motion to dismiss, however, Akl filed a motion for leave to

file a counterclaim. I denied Akl's motion for leave on

September 4, 2008, and dismissed the adversary proceeding on the

Hospital's motion.


### The Sanctions Motion

On October 14, 2008, Akl filed a Motion for Sanctions Under

28 U.S.C. § 1927 and in the Alternative Motion for Exercise of

the Court's Inherent Power to Sanction Plaintiff and Counsel (the

"Sanctions Motion"). (Dkt. No. 110). In his Sanctions Motion

Akl contended that the Hospital, Patrick Potter, the Hospital's

attorney in this adversary proceedings, and others committed

sanctionable conduct by (1) commencing this adversary proceeding,

(2) filing the motion to quash his initial discovery requests,

and (3) filing the motion for summary judgment. As relevant

here, Akl argued that "the complaint was filed for improper

purposes, to harass and cause financial and other damage, and without any evidentiary support for the allegations and factual contentions contained therein," that the "motion for summary judgment [] was not warranted by existing law, was intended to further the improper purposes, and contained falsified documents," and "in the process of advocating a motion for protective order and an opposition for leave to file a counterclaim, Plaintiff's counsel orally made serious misrepresentations to the Court." Sanctions Motion at 1-2. In sum, it was Akl's contention that this proceeding and the documents filed in furtherance of it were without merit and designed solely to harass him:

> The Hospital and its counsel did not have the slightest subjective belief that Akl acted willfully and maliciously to injure the Hospital, did not have a shred of evidence in support thereof and knew that no evidence thereto existed; rather, it was the Hospital and its counsel that repeatedly acted in a willful and malicious manner throughout the peer-review process and throughout the proceedings in the Circuit Court for Arlington County. At the time of filing of the adversary proceeding, the Hospital and its counsel did not believe that Defendant acted willfully or maliciously, nor did they believe they could prove willfulness or malice on the part of Defendant but were merely hoping to achieve ulterior motives through coercion. When they failed to achieve their unlawful purposes, they attempted to prevail on summary judgment through fraud and by asking the Court to apply collateral estoppel to a judgment that not only did not rule that Defendant acted willfully or maliciously but was also invalid because it was obtained by the Hospital and its counsel through repetitive fraud upon the Arlington County Circuit Court.

Sanctions Motion at 2.

8

In response to Akl's Sanctions Motion, the Hospital, Potter, and the other parties against whom Akl sought sanctions filed a Motion to Strike, Dismiss and Otherwise Deny the Sanctions Motion (Dkt. No. 115).  In a Memorandum Decision and Order dated October 15, 2009, I granted in part and denied in part the Hospital's motion, dismissing all claims against on of Potter's co-counsel, Baum.  In a subsequent Decision and Order dated March 22, 2010, I further dismissed the claims against Potter's other co-counsel, McTavish, dismissed Akl's § 1927 claim for the filing of the complaint, and dismissed Akl's § 1927 and inherent authority sanctions claim for the motion to quash.

The Motion for Summary Judgment as to<br>the Remaining Portions of the Sanctions Motion

As set forth in the April 22, 2010, Memorandum Decision and Order, the remaining sanctions claims are as follows:

(1) sanctions under the court's inherent authority for the filing of the complaint against Potter and Virginia Hospital;

(2) sanctions under § 1927 against Potter for the filing of the motion for summary judgment, except to the extent Akl argues the motion is sanctionable merely because it was in furtherance of the adversary proceeding; and

(3) sanctions under the court's inherent authority against Potter and Virginia Hospital for the filing of the

motion for summary judgment.

The Hospital has now filed a motion for summary judgment as to
the remaining sanctions claims, which this opinion addresses.

II

A party is entitled to summary judgment when there is no
"genuine issue of material fact" and the undisputed facts warrant
judgment for the moving party as a matter of law.  Fed. R. Civ.
P. 56 (a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
In addressing a motion for summary judgment, "the court must view
the evidence in the light most favorable to the party against
whom summary judgment is sought and must draw all reasonable
inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Whether any
disputed issue of fact exists is for the court to determine.
*Balderman v. United States Veterans Admin.*, 870 F. 2d 57, 60 (2d
Cir. 1989).  The moving party has the initial burden of
demonstrating the absence of a disputed issue of material fact.
*Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a
showing has been made, the non-moving party must either (1) cite
to particular parts of materials in the record showing that a
fact is genuinely disputed or (2) "show[] that the materials
cited do not establish the absence . . . of a genuine dispute, or
that an adverse party cannot produce admissible evidence to
support the fact." Fed. R. Civ. P. 56(c)(1).  The party opposing

summary judgment "may not rely on conclusory allegations or
unsubstantiated speculation." *Scotto v. Almenas*, 143 F. 3d 105,
114 (2d Cir. 1998). Moreover, not every disputed factual issue
is material in light of the substantive law that governs the
case. "Only disputes over facts that might affect the outcome of
the suit under the governing law will properly preclude summary
judgment." *Anderson*, 477 U.S. at 248.[4]

III

In their motion, Respondents argue that the court should
grant them summary judgment as to Akl's remaining inherent
authority sanctions claims on the basis that Akl has failed to
present any evidence that either the complaint or motion for
summary judgment were filed in bad faith. Likewise, Potter
argues that summary judgment in his favor is appropriate as to
the § 1927 sanctions claim for filing the motion for summary
judgment because Akl has failed to present any evidence that the
motion was unreasonable or vexatious or that Potter's actions
were either reckless or in bad faith. I will address each of
these arguments in turn.

---

[4]    Although the Hospital questions the need to meet the
standards for summary judgment when a party seeks dismissal of a
motion for sanctions and, particularly, the need to show a lack
of genuine issue of material fact, Motion at 2 n.1, because the
Hospital prevails under the usual summary judgment standards, I
decline to address the issue.

A

Sanctions Against Respondents Under the
Court's Inherent Authority for Filing the Complaint

It is well-established "that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotations and citations omitted). These inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). Included among these inherent powers is the power to assess attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). Importantly, however, this power, "must be exercised with restraint and discretion." *Roadway Express Inc. v. Piper*, 447 U.S. 752, 764 (1980). The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), set forth two such restraints. First, a court "must find some connection between the sanctioned conduct and a process of the court in the litigation before it." *Alexander v. F.B.I.*, 541 F. Supp. 2d 274, 303 (D.D.C. 2008). Second, a court "must make an explicit finding that [the target of the sanctions] acted in bad faith."

12

*Id.* (internal quotations omitted) (alterations in original).  The
Respondents set forth three different bases for granting summary
judgment in the their favor on this claim.

First, the Respondents contend that because Akl stated that
he hoped the Hospital would file the nondischargeability
complaint, his motion for sanctions under the court's inherent
authority should fail.  The Respondents, however, cite no
authority for this proposition, which is unsurprising because it
misconstrues the purpose of the sanction.  Sanctions under the
court's inherent authority are intended to vindicate the
authority of the courts.  As the Supreme Court explained in
*Chambers*, "[t]he imposition of sanctions in this instance
transcends a court's equitable power concerning relations between
the parties and reaches a court's inherent power to police
itself, thus serving the dual purpose of vindicating judicial
authority without resort to the more drastic sanctions available
for contempt of court and making the prevailing party whole for
expenses caused by his opponent's obstinancy." *Chambers*, 501
U.S. at 46.  For this reason, Akl's subjective hope that the
Hospital would commence this adversary proceeding is irrelevant
to sanctions under the court's inherent authority.

The Respondents next argue that they are entitled to
judgment on Akl's inherent authority sanctions claim for the
filing of the complaint because Akl has failed to adduce any

13

evidence of bad faith.  "To make a showing of bad faith, whether
for purposes of imposing sanctions pursuant to § 1927 or the
court's inherent authority, a party must demonstrate that the
opposition engaged in deliberate conduct for an improper motive,
such as harassment, needless delay, or disruption of the
litigation. . . . [S]uch bad faith can be proven directly through
evidence of subjective intent, or indirectly through evidence of
objective actions that lead to an inference of subjective
intent--such as filing a document with the court that is plainly
frivolous, lacking even a colorable basis in law or fact." *In re
Greater Southeast Comm. Hosp. Corp. I*, 2010 WL 3123086, at *3
(Bankr. D.D.C. Aug. 9, 2010).  The Respondents contend that
summary judgment in their favor is appropriate because Akl has
failed to produce any subjective or objective evidence of their
bad faith.

As to objective evidence of bad faith, Respondents argue
that Akl has failed to show that the complaint was without color.
Motion at 11.  In this regard, they state that Judge Kendrick's
oral ruling and Judge Kendrick's oral ban on Akl filing any more
cases in the Circuit Court by themselves show a colorable basis
for commencing the nondischargeability action.[5]  I agree.  Even
though Judge Kendrick's oral ruling was not entitled to

---

[5]     Akl viewed the oral ban as an order because he
requested vacating of the oral ban in an appeal he took.

collateral estoppel effect, it certainly shows a colorable basis for VCH's nondischargeability action under § 523(a)(6) of the Bankruptcy Code.

Regarding evidence of subjective intent of bad faith, Respondents aver that they filed the complaint solely to obtain a nondischargeability determination and without any intent to harass Akl, cause delay, or for any other improper purpose. Potter Decl. ¶¶4-5. Moreover, Respondents note that they have not pursued other actions against Akl and did not increase litigation costs in this action by trying to seek discovery. Potter Decl. ¶¶6-7. Further, they promptly prosecuted the action and filed a motion to dismiss after I denied their motion for summary judgment. Left uncontroverted, these facts would establish an absence of evidence of bad faith, entitling the Hospital and Potter to summary judgment on Akl's inherent authority sanctions claim as to the filing of the complaint.

In his opposition to Respondents' motion for summary judgment, Akl sets forth several facts which he contends raise an issue as to whether this proceeding was instituted in bad faith.

### 1. Alleged Inconsistent Positions that Akl Argues Support an Inference of Bad Faith

Akl first argues that the Hospital has taken conflicting positions as to the basis for its claim, which could lead a reasonable trier of fact to conclude that this adversary

proceeding was instituted in bad faith.  Opp. at 51-56.

Particularly, Akl contends that the Hospital has at times argued

that its claim was based solely on Judge Kendrick's oral ruling,

while at other times contending that its claim was based on "the

public record in the litigation"--i.e., that the complaint

asserted a broader evidentiary basis than Judge Kendrick's oral

ruling alone.  Opp. at 52.  I fail both to see any conflicting

positions and, in any event, how they would lead to a reasonable

inference of bad faith.

While the Hospital's nondischargeability complaint clearly

is geared towards Judge Kendrick's order, it also encompasses a

broader factual basis to establish the nondischargeability of the

sanction award:  ¶ 6, Akl had filed eight lawsuits in connection

with the revocation of his medical privileges; ¶ 7, seven of

Akl's lawsuits had been dismissed; ¶ 8, Akl has been enjoined

from filing further lawsuits in Virginia relating to the

revocation of his medical privileges.  What is evident from both

the complaint and the proceedings before this court is that the

Hospital intended to rely primarily on Judge Kendrick's orders

and oral rulings, standing alone, to obtain judgment but reserved

the right to have this court determine whether the claim was

nondischargeable on a broader evidentiary basis.  All of the

statements that Akl alleges are inconsistent reflect this: there

is no inconsistency.

16

The Hospital's Rule 26 disclosure states that it would rely
on the entire record of the litigation only if it were required
to "go beyond the above-referenced rulings."  The Hospital
interrogatory response  that "the entire record of the litigation
with Dr. Akl demonstrates that he acted maliciously . . ."
accompanies seven other responses that clearly show the complaint
was primarily based on Judge Kendrick's order.  Int. Resp. Nos.
1, 2, 5, 6, 7, 13, 16.  Attorney McTavish only stated that she
would turn to "the extensive public record that has already been
established in the Virginia State Court with respect to these
matters . . ." to demonstrate willfulness after I denied the
Hospital's motion for summary judgment, which was based on giving
collateral estoppel effect to Judge Kendrick's orders and oral
ruling.  Similarly, the fact that the Hospital litigated the
motion to quash instead of dismissing the adversary proceeding
after I denied its motion for summary judgment only bolsters this
point.  As Akl himself recognizes "if Respondents truly brought
the suit solely on Judge Kendrick's statement, then they should
have moved to dismiss right then in Court . . . ."  Opp. at 55.

The remaining statement to which Akl points is Potter's
statement that the complaint only stated that "Judge Kendrick . .
. issued a sanctions ruling against Dr. Akl, and that the
sanctions ruling was, as a matter of law, non-dischargeable."
Tr. Jan. 11, 2011, hearing at 7 (Dkt. No. 201).  While Potter's

17

statement arguably is inconsistent with the court's reading of
the complaint, the Rule 26 disclosure, the interrogatory
responses, and the Hospital having litigated the motion to quash
after the court denied the Hospital's motion for summary
judgment, it does not lead to a reasonable inference of bad
faith.  Again, the complaint was clearly geared towards Judge
Kendrick's orders and oral rulings, but those rulings recited
misconduct by Akl in prior proceedings, so it is not clear that
Potter's statement is flatly inconsistent with the broad view I
take of the complaint.  That Potter, nearly three years after
having moved to dismiss this adversary proceeding, may have
viewed the complaint as limited solely to Judge Kendrick's ruling
is not enough to show a material factual issue in dispute as to
bad faith.  At most, it shows that this proceeding has wound on
for too long.

Moreover, even if the Respondents have taken conflicting
positions as to the basis for the complaint, that alone does not
lead to a reasonable inference of bad faith.  Implicit in Akl's
argument that the Respondents have taken conflicting positions is
that one of the positions is unsupportable and, accordingly, in
bad faith.  That, however, is not the case.

If the complaint were read to assert a broader evidentiary
basis, which, for the reasons previously stated, I believe it
does, Judge Kendrick's oral ruling by itself provides a good-

faith factual basis for finding the fee award nondischargeable.
Lest it be overlooked, an independent trier of fact found Akl's
conduct in the Circuit Court sanctionable and was a basis for
banning him from filing further suits in that court, an extreme
remedy.  Although Judge Kendrick's order and oral ruling were not
entitled to collateral estoppel effect, they certainly provided
the Hospital with a good-faith factual basis for instituting this
suit and having this court determine whether Akl's actions in
those proceedings warranted a finding that the attorneys' fee
award was nondischargeable on a broader evidentiary basis than
just Judge Kendrick's oral ruling and order.

Alternatively, as discussed later in addressing Akl's fourth
argument, if the complaint is read to be limited solely to giving
collateral estoppel effect to Judge Kendrick's order and oral
ruling and finding the fee award nondischargeable on that basis
alone, it is not so without color to lead to a reasonable
inference of bad faith.  Again, Judge Kendrick's order and oral
ruling provided the Hospital with a good-faith factual basis for
filing the complaint.  Moreover, the Hospital's reply to Akl's
opposition to its summary judgment motion on the
nondischargeability complaint set forth multiple legal arguments
why Judge Kendrick's order would be entitled to collateral
estoppel effect in this court.  See Part III.B, *infra*.  Although
I ultimately disagreed with the Hospital, these legal arguments

19

were not so "plainly frivolous, lacking even a colorable basis in law or fact," *In re Greater Southeast Comm. Hosp. Corp. I*, 2010 WL 3123086 at *3 (Bankr. D.D.C. Aug. 9, 2010), as to lead to a reasonable inference of bad faith.  For these reasons, Akl's first basis for denying the Respondents' motion fails.

### 2. Akl's Argument that He Could Be Viewed as Having Acted Without Malice

Akl next argues that the record from Akl's previous suits does not support a nondischargeability action.  Particularly, Akl notes that *Akl I*,[6] which, presumably, includes most of the fees that the Hospital sought to have declared nondischargeable, was filed on Akl's behalf by a well-respected lawyer at a well-respected law firm and that in none of the proceedings at issue did a judge ever state that Akl acted with malice.  Opp at 56-57. This argument fails for two reasons.

First, Judge Kendrick's order and oral ruling alone provide a reasonable factual basis for instituting the adversary proceeding.  Although Akl might have been able ultimately to prevail at trial based on his evidence, it does nothing to undermine the fact that Judge Kendrick's rulings provided the Respondents with a good-faith factual basis for filing the case.

---

[6]    *Akl I* is the original suit Akl commenced against the Hospital in the Circuit Court.  The Circuit Court later consolidated two other cases, *Akl II* and *III*, that Akl commenced against several Hospital employees with *Akl I*.

Second, and relatedly, at issue for purposes of this motion is whether there is any evidence that the Respondents commenced the proceeding in this court in bad faith, not whether Akl commenced the Virginia proceedings in good faith.  Indeed, Akl might very well have filed the Virginia proceedings in good faith.  But, to determine if the Respondents' filing of the complaint was sanctionable, Akl must show that the Respondents did not have a good faith basis for believing Akl commenced the Virginia proceedings in bad faith.  The Respondents have come forward with a declaration attesting that the complaint was not filed for an improper purpose and have shown, for the reasons previously stated, that the complaint had a colorable basis. That *Akl I* was filed by a reputable lawyer at a reputable law firm and that no judge ever employed the term "malice" does not speak to the Respondents' subjective intent and does nothing to cast doubt on the primary factual basis on which they instituted this proceeding: Judge Kendrick's oral ruling.

Akl also contends that "it is impossible to discern from the Hospital's Complaint in this adversary proceeding why the Hospital contends that Akl's claims and allegations are 'baseless' and 'malicious,' and why his lawsuits were 'baseless and harassing,'" Opp. at 57, and, based on this, that "a reasonable trier of fact [could] infer . . . that the Complaint was brought in bad faith."  This argument, too, fails to provide

21

a reasonable inference of bad faith.  At most, this shows a
pleading deficiency.  It does not, however, make the complaint so
"plainly frivolous" as to infer bad faith.  Again, the complaint
was grounded in a finding by a neutral fact-finder that Akl had
violated Virginia's equivalent of Rule 11 and a determination
that Akl would be barred from filing any further suits in that
court.  This alone provided a colorable factual basis for
instituting the suit and Akl's evidence to the contrary does
nothing to undermine it.

> 3.  Akl's Argument that in Suing Others than the
> Hospital He Could Not Have Intended to Injure the Hospital

Akl third argues that the Hospital and Potter knew that Akl
did not and could not have acted wilfully and maliciously toward
the Hospital or caused it injury and, thus, this proceeding was
instituted in bad faith.  Specifically, Akl contends that in
cases where Akl did not sue the Hospital itself (what have been
referred to as *Akl II, III, IV*, and *V*), he could not have had the
intent to injure required by § 523(a)(6):

> The only possible injury the Hospital could claim is one
> resulting from a lawsuit against the hospital itself.  If
> the hospital decided to defend other persons, and if the
> other persons opted to allow the Hospital to assume the
> expenses of their defense, that is a fate the Hospital
> decided by its own choosing, not by Akl, and no one
> "forced" it to do so.  In an affidavit to the Arlington
> Court, McTavish stated that the Hospital "agreed to pay
> for the defense of each of the individuals whom Dr. Akl
> had sued[.]"  *See* Ex. 37, Affidavit of Karen-Faye
> McTavish, at 2.  In fact, the Hospital's Board of

Directors had to issue resolutions to defend the above
individuals.  *See* Ex. 38, Invoices submitted by the
Hospital to the Arlington Court in support of its motion
for sanctions, at 3/15/05, 4/04/04, 5/23/05 and 5/24/05.
The Hospital based its argument in support of excepting
the discharge of the claimed debt on the fact that Akl
had acted "willfully and maliciously" in his actions that
led to the alleged debt, *in its entirety*.  A large part
of the debt, however, was for expenses the Hospital
decided to incur of its own will, when it decided to
defend other persons.  Thus, the Hospital's claim against
Akl is a clear attempt to obtain monies that were not the
result of any action by Akl against *the Hospital*, even
assuming the actions were "willful or malicious."  In Akl
II, III, and IV, the Hospital was not even a defendant.
How can it claim that Akl intended to cause injury to it?
Did it expect Akl to "guess" that it would decide to jump
in and defend his previous employer and the two Nurses,
among others?  This logic is absurd.

Opp. at 62 (alterations and emphasis in Opposition).

Assuming, as Akl contends, that the Hospital had no legal

obligation to defend the parties in *Akl II-IV*, seeking to have

the entirety of its fees declared nondischargeable is not

evidence of bad faith.  Certainly, the Hospital had both ethical

and economic reasons for defending these suits:  it is something

businesses do frequently when their employees are subject to

suits arising in the course of their employment.  If Akl, a

highly-educated, sophisticated party, was aware of this practice,

the intent to injure required by § 523(a)(6) would be present.

Accordingly, the fact that the Hospital sought to recover fees

incur in the defense of others in and of itself does not provide

an inference of bad faith, and this basis for defeating the

Respondents' motion fails.

### 4.  Akl's Argument that Judge Kendrick's
### Ruling Alone Would Not Support the Complaint

Akl next contends that Judge Kendrick's ruling alone could

not provide a legally sufficient basis to bring the suit and,

accordingly, a complaint based solely on that ruling would lack

color and provide an inference of bad faith.  First, like Akl, I

read the complaint to assert a broader evidentiary basis than

just Judge Kendrick's rulings.  But even if the complaint were

limited solely to Judge Kendrick's rulings, the Respondents still

had colorable arguments for finding the debt nondischargeable on

this basis alone.  The Hospital's reply to Akl's opposition to

the motion for summary judgment in the proceeding set forth

several colorable arguments that Judge Kendrick's written order

sanctioning Akl incorporated his oral ruling and that the order

was entitled to collateral estoppel effect.  These arguments are

not so plainly frivolous to give rise to an inference of bad

faith and, accordingly, this basis for denying the Respondents'

motion for summary judgment likewise fails.

### 5.  Akl's Argument that the Circuit
### Court Ruling Was Obtained by Fraud

Akl's fifth argument is that the Hospital knew the judgment

against him was obtained by fraud and, therefore, this suit was,

by extension, in bad faith.  This harkens back to what can only

charitably be described as Akl's conspiracy theory of an extra-

judicial agreement between the Hospital, its attorneys, and two reputable judges in the Circuit Court. I have examined the hundreds of pages Akl attached to his opposition that he contends evidence this conspiracy to thwart his access to the courts, and his contentions in this regard are at best conclusory. Moreover, even if Akl had set forth a plausible basis for his conspiracy theory, this argument is barred by the *Rooker-Feldman* Doctrine. *See Akl v. Swersky*, No. 1:06-cv00964 (E.D. Va. filed Dec. 22, 2006). Accordingly, this is an insufficient basis for defeating the motion for summary judgment.[7]

> ### 6. Akl's Argument that the Proceeding Was Brought in Bad Faith Because Potter and the Hospital Knew They Could Only Reach Summary Judgment

Akl's sixth argument is that the Hospital and Potter brought this adversary proceeding knowing that they could only reach summary judgment, and, thus, the proceeding was commenced in bad

---

[7] Akl also argues in this section of his response that the Circuit Court judgment was void because the court did not have jurisdiction to award attorneys' fees for *Akl IV*, the federal court proceeding. Accordingly, Akl continues, this adversary proceeding was brought in bad faith. There are two problems with this argument. First, Akl appealed the Circuit Court decision to at least the Virginia Supreme Court, which affirmed Judge Kendrick's award. Thus, subject matter jurisdiction has been conclusively determined for purposes of this proceeding and is not subject to collateral attack. Second, even assuming that judgment were void, the Hospital still had a right to file a nondischargeability action and have this court determine that any claim that it had, whatever that claim was ultimately fixed at, was nondischargeable.

faith.  As evidence of this Akl cites to the Hospital's Rule 26
disclosure where it stated that "[b]ecause . . . this case
involves a question of law, the Hospital believes that there are
no fact issues."[8]   This disclosures, Akl concludes,
"demonstrates their state of mind at the time of filing of the
Complaint--that if they lose on summary judgment, they will have
to dismiss the case because they simply cannot 'go beyond' Judge
Kednrick's ruling to demonstrate willfulness or malice because
there was none."  Opp. at 70.  This argument fails because it
reads too much into the disclosure and, in any event, does not
provide a reasonable inference of bad faith.

All that the Hospital's disclosures demonstrate is its
belief that it had a chance to prevail on Judge Kendrick's oral
ruling alone.  Nothing in the Respondents' disclosure shows that
they could not "go beyond" the oral ruling to prove Akl's bad
faith.  Indeed, the same disclosure Akl relies on to show the
Hospital's bad faith belies this point:  the Hospital also stated
that if Judge Kendrick's ruling was insufficient, then it would
rely on the public record.  Opp. at 71.  This would include not
only Akl's filings in the Virginia proceedings, but transcripts

---

[8]  Importantly, as Akl notes, the Rule 26 disclosure further
stated "[i]f, however, the Hospital is required to go beyond the
court's above-referenced rulings to prove anything, then the
public record alone in the litigation with Dr. Akl would
demonstrate that he acted maliciously in prosecuting his claims
against the Hospital."

of proceedings before those courts, orders issued by those
courts, and discovery requests and responses filed in those
proceedings.

Further, even if the Respondents commenced this adversary
proceeding intending to proceed no further than summary judgment,
that alone is not indicative of bad faith.  For this conclusion
to follow, Akl would need some evidence that the motion for
summary judgment itself were filed in bad faith, *i.e.*, that it
had no colorable basis in fact or law or other evidence of the
Respondents' subjective bad faith.  As I explain below, however,
Akl has come forward with insufficient evidence in this regard.
Moreover, even if Akl's theory were true, it would only be
indicative of the Hospital's desire to avoid extensive litigation
and expenses, not that the proceeding was filed in bad faith.
Indeed, if the Respondents were truly intent on harassing Akl,
they would have continued to prosecute the complaint to
completion, running up thousands of dollars in legal fees.  For
these reasons, Akl's sixth argument also fails to defeat the
Respondents' motion for summary judgment as to the inherent
authority sanctions claim for commencing this proceeding.

   7.  Akl's Argument that Obtaining the Circuit Court Judgment
       After the Automatic Stay Went Into Effect Shows Bad Faith

   Akl's seventh basis for denying the Respondents' motion for
summary judgment as to the inherent authority sanctions claim for

27

filing the complaint is that the judgment order issued on May 18, 2007, was obtained in violation of the automatic stay. Opp. at 72. Akl commenced the chapter 7 case underlying this adversary proceeding on May 17, 2007, and alleges in his opposition that the Hospital had knowledge of the filing prior to obtaining the May 18, 2007, judgment order. Akl does not explain, however, and I fail to see, how this provides an inference of bad faith.

The May 18, 2007, judgment order was to correct clerical mistakes in the original October 2, 2006, order. The Hospital had moved for this order prior to Akl having filed for bankruptcy, Akl Appx. ¶ 30, and Akl does not allege that the the Hospital did anything to obtain the order after the stay was in effect. The connection between the Circuit Court having signed a clerical order the day after Akl commenced his case with no evidence that it was signed at the Hospital's urging and the Respondents having commenced this adversary proceeding is too tenuous to provide an inference of bad faith and, accordingly, fails to defeat the Respondents' motion.

### 8.  Akl's Argument that the Delay in Filing the Complaint Shows Bad Faith

Akl eighth argues that the Hospital did not care about recovering on its claim, which shows that the proceeding was instituted in bad faith. In support of the argument, Akl alleges that Potter attended the meeting of creditors and had not

commenced this adversary proceeding as of the last day to file
nondischargebility complaints.  On that day, Akl continues,
Potter asked Akl's bankruptcy counsel for an extension so he
could ask the Hospital whether it wanted to pursue this action.
In requesting the extension, Akl states that Potter represented
to Akl's attorney that the Hospital had not been returning his
calls on the issue.  Finally, after Akl's attorney granted the
extension, the Hospital waited until the last day to file the
complaint commencing this proceeding.  Taken together, Akl
concludes, these facts show that the Hospital was not interested
in collecting the debt but solely in harassing him.

     As an initial matter, Akl's statement of what his attorney
heard from Potter is not competent evidence to defeat a motion
for summary judgment: Akl has filed no affidavit to this effect
and, in any event, it is hearsay.  Further, Akl's conclusion
based on these facts is not reasonable.  Perhaps the Hospital was
evaluating whether it wanted to subject itself to further
litigation with Akl.  Perhaps it was weighing whether the amount
it could potentially recover from Akl was worth the expense.
Perhaps it got lost in the shuffle of an organization that, quite
likely, had more important things to attend to.  The point is,
there are many reasonable explanations for why the Hospital
waited to file this proceeding, none of which support a finding

of bad faith.  Akl's unsupported inference otherwise is
insufficient to defeat the motion.


   9.  Akl's Argument that the Failure to Pursue the Adversary
   Proceeding After I Denied Summary Judgment Shows Bad Faith

     Akl ninth argues, similarly, the Hospital's dismissal of the
adversary proceeding after I denied its motion for summary
judgment shows that this proceeding was commenced in bad faith.
Opp. at 72.  Again, though, this is not a reasonable conclusion
based on the facts.  The most that a reasonable finder of fact
could conclude from this is that the Hospital thought the
adversary proceeding was only worth pursuing if it could obtain
judgment without going through the hassle of discovery.  Although
the Hospital was mistaken in its belief that it could obtain
summary judgment on Judge Kendrick's rulings alone, this does not
amount to bad faith.  For Akl's conclusion to follow, there would
need to be evidence that the Hospital and Potter knew that the
motion for summary judgment would not succeed.  Akl has come
forward with insufficient evidence that could lead a finder of
fact to that conclusion and, accordingly, this argument also
fails.


          10. Akl's Argument that the Hospital's Failure
             to Submit a Declaration with the Summary
          Judgment Motion as to Sanctions Shows Bad Faith

Akl's tenth basis for defeating the Respondents' motion for summary judgment on Akl's inherent authority sanctions claim for filing the complaint is that the Hospital did not submit a declaration denying Akl's allegations with that summary judgment motion.[9] Opp. at 73.  This, Akl contends, shows that no agent for the Hospital is willing to be named responsible for the Hospital's actions, which leads to an inference of bad faith.  This argument fails for two reasons.  First, it is Akl's burden to show that the proceeding was commenced in bad faith.  The Hospital need only note the absence of material evidence of bad faith, which it has repeatedly done, and then Akl bears the burden of showing a material fact in dispute.  Second, even assuming that Akl's conclusion that no Hospital agent is willing to be held responsible for the Hospital's actions follows is true, this does lead to a reasonable inference of bad faith.  It is undisputed that Akl has commenced numerous suits against many of the Hospital's employees.  The reasonable inference from these facts is that no Hospital employee would want to subject himself to another potentially frivolous lawsuit.

---

[9]  Patrick Potter, the Hospital's attorney, was the only Respondent to submit a declaration with the motion for summary judgment regarding sanctions.

11.  Akl's Argument that Potter's
Statements on January 1, 2011, Show Bad Faith

Akl penultimately contends that several statements by Potter
at a hearing before this court on January 11, 2011, provide
further inferences of bad faith.  Opp. at 73-75.  First, Akl
points to Potter's characterization of the adversary proceeding
and the motion for summary judgment as limited to stating that
Judge Kendrick's "sanctions ruling was, as a matter of law,
nondischargeable."  Tr. at 7 (Dkt. No. 201).  Akl contends,
similarly to his first argument, that the complaint was broader
than this--that the complaint stated he acted wilfully and
maliciously in the "previous suits" and that Judge Kendrick's
order was only one basis for the suit--and Potter's
mischaracterization show bad faith.  As I stated above, Akl is
correct about the scope of the complaint, but Potter's statement
does not provide a reasonable inference of bad faith.  Again,
Judge Kendrick's ruling is clearly the thrust of the complaint,
but it is not limited to just that ruling.  Given the history of
this proceeding (dismissal after I denied a summary judgment
motion focused solely on Judge Kendrick's order), it is
unsurprising that Potter focused on just that ruling.  His
statement in this regard does not show bad faith.

Next, Akl contends that Potter's statements at the January
11, 2011, hearing that he alone had made the legal decision to
file the complaint, not attorney McTavish, and that he was not

even sure McTavish had seen the complaint prior to arguing the
motion to quash before this court were unbelievable and, thus,
provide an inference of bad faith.  In support of his contention
that Potter's statements were unbelievable, Akl notes that
McTavish signed the certificates of service for the Rule 26
disclosure, signed the responses to interrogatories, and argued
the motion to quash.  First, I do not find these statements
unbelievable.  As Akl is aware, McTavish is not a bankruptcy
lawyer.  It is unsurprising that Potter, a bankruptcy specialist,
would handle the nondischargeability complaint, a bankruptcy-
specific issue, while delegating to McTavish discovery-related
matters, a general litigation issue.  The fact that McTavish
signed certificates of service for discovery matters or argued a
motion to quash does not lead to a reasonable inference that
Potter's statements were false.  Second, even assuming the
statements were false, they do not show that the complaint was
filed in bad faith.  At most, they show that Potter was taking
responsibility for documents that he filed and advocated before
this court, a stance consistent with his position as a bankruptcy
partner at the firm.

Third, Akl contends that the following statement by Potter
during the hearing shows bad faith because whether McTavish was a
bankruptcy lawyer was irrelevant since the complaint dealt with
the entire record in the previous litigation:

33

> After all that, then the Court asked, "Well, if you can't"-the way I understood it was, "If you can't rely upon this, then what else are you going to rely upon?" So you have a non--Ms. McTavish is not a bankruptcy lawyer. You have a non-bankruptcy lawyer who was here as a litigator, prepared to litigate a discovery dispute, being asked by the Court, fairly or unfairly, it is what it is,"What else are you going to rely upon if you can't rely upon this?" And she did her job. She did the best she could.

I do not see how this provides an inference that the complaint was filed in bad faith, and Akl makes no arguments in this regard. Without more, these statements are insufficient to defeat the Hospital's and Potter's motion for summary judgment.[10]

### 12. Akl's Argument that the Respondents' Blanket Denials Show Bad Faith

Finally, Akl contends that the ultimate demonstration of the Hospital's and Potter's bad faith is that they have failed to address the specific evidence Akl submitted in his motion for sanctions. While, to be sure, the Hospital and Potter have not addressed each part of Akl's motion in their moving for summary judgment or in otherwise responding to the motion, that does not provide an inference of bad faith. Akl's sanctions motion, including exhibits, was 324 pages long, all in unnumbered

---

[10]    Also in this section of his response, Akl states that shortly after they filed this adversary proceeding, the Hospital and its counsel filed a complaint with the counterterrorism unit of the FBI. Akl presents no evidence to substantiate this claim. Therefore it is insufficient to provide an inference of bad faith and insufficient to defeat the motion.

paragraphs.  The motion was at times rambling, littered with
irrelevant information, and took this court many hours to
decipher.  Moreover, this proceeding is, at its base, collateral
litigation.  The Hospital and Potter were well justified in
taking the approach they chose in addressing Akl's motion for
sanctions.  As the burden is on Akl to demonstrate their bad
faith, a blanket denial coupled with several defenses was
sufficient and not in any way indicative of bad faith.
Accordingly, this final argument also fails.


*  *  *

Viewing the evidence advanced by Akl in the aggregate does
not support a reasonable inference of bad faith.  Regardless of
whether the complaint is read as based solely on Judge Kendrick's
orders and oral ruling or is read more expansively to include the
entire record of the litigation, Judge Kendrick's order alone
provides the Hospital and Potter with a good faith basis for
commencing this adversary proceeding.  If the complaint is
limited just to Judge Kendrick's order and oral ruling, then the
fact that the Respondents were mistaken as to the collateral
estoppel effect to which the order and ruling were entitled is at
most negligent.  But for sanctions under the court's inherent
authority bad faith is required.  None of the circumstantial
evidence Akl presents in his response, even when taken in the

aggregate, shows more than negligence on the Hospital's and
Potter's part.  Alternatively, if the sanctions motion is really
based on the entire record in the Virginia proceedings, as Akl
contends and I, as set forth above, agree, then Judge Kendrick's
orders and oral ruling provide a plausible basis for finding that
the other proceedings that were not before him were also willful
and malicious.  This is the case notwithstanding the fact that
Judge Kendrick might have exceeded his authority in opining on
sanctions under Virginia Code § 8.01-271.1 for proceedings not
before that court.  There is a plausible argument that Akl's bad
faith in one proceeding extended to other proceedings against
defendants related to the Hospital.

     For these reasons, I will grant the Hospital's and Potter's
motion for summary judgment as to Akl's inherent authority
sanctions claim for the filing of the complaint.


                                B

                 Sanctions under the Court's Inherent
                Authority for the Motion for Summary Judgment

     The Hospital and Potter next move for summary judgment on
Akl's inherent authority sanctions claim for filing the motion
for summary judgment.  Like the complaint, the Hospital and
Potter argue that judgment on this sanctions claim is appropriate
because Akl has failed to adduce any evidence that the motion was
filed for an improper purpose or that it did not otherwise have a

                               36

colorable basis.

As to improper purpose, Potter avers that respondents filed the motion in good faith, Potter Decl. ¶ 8, and that is was not filed "to harass, cause delay or for any other improper purpose," Potter Decl. ¶ 9. Left undisputed, as the Hospital and Potter contend, this would establish an absence of evidence of subjective bad faith regarding the filing of the motion for summary judgment. As to objective evidence of bad faith, the Hospital and Potter argue that summary judgment is warranted because the motion had a colorable basis in fact and law: "Judge Kendrick specifically found that Akl violated Virginia's sanctions statute. Further, Judge Kendrick enjoined Akl from filing further lawsuits against the Hospital in Virginia state courts." Motion at 14.

In his opposition, Akl sets forth several bases for denying the Hospital's and Potter's motion for summary judgment. I will again address each in turn.

Akl first argues, citing to my April 21, 2010, opinion, that the summary judgment motion is in bad faith because it was brought under a complaint that was filed in bad faith. Opp. at 76. As I found above, however, Akl has failed to produce sufficient evidence showing that the complaint was filed in bad faith. Accordingly, this argument fails, and Akl bears the burden of producing evidence showing a dispute of material fact

as to whether the summary judgment motion standing on its own was

filed in bad faith, independent of the complaint.

Akl next argues that the court should deny the motion

because the Circuit Court orders the Hospital relied on in its

motion were clearly limited to a contractual award,[11] not an

---

[11]    The October 2, 2006, Circuit Court order provided as
follows:

> UPON CONSIDERATION of the Defendants' motion for
> sanctions and accompanying bill of particulars,
> Plaintiff's opposition thereto, oral argument and
> evidence presented to the Court on October 2, 2006, and
> the entire record in this case, it is this 2nd day of
> October 2006, by the Circuit Court for the County of
> Arlington,
>     ORDERED, that pursuant to the contract entered into
> between Plaintiff and Defendant Virginia Hospital Center-
> Arlington (the "Hospital"), Defendants' motion for costs
> and reasonable attorney's fees is GRANTED; And it is
> further
>     ORDERED, that Plaintiff be required to pay the
> Hospital the costs and reasonable attorney's fees that
> the Hospital incurred in the defense of actions relating
> to his clinical privileges, in the amount of $616,114.41.

The May 18, 2007, Circuit Court judgment order provided as
follows:

> UPON CONSIDERATION of Virginia Hospital Center-
> Arlington Health System's (the "Hospital" motion to
> correct clerical mistakes in this Court's October 2,
> 2006 Order in this case regarding Defendants' motion
> for sanctions and accompanying bill of particulars,
> Plaintiff's opposition thereto, oral argument and
> evidence presented to the Court on October 2, 2006, and
> the entire record in this case, it is this 18th day of
> May, 2007, by the Circuit Court for the County of
> Arlington,
>     ORDERED, that the Hospital's motion to correct
> clerical mistakes is granted;
>     ORDERED, that, as noted in this Court's October 2,
> 2006 Order, pursuant to the contract entered into

award under Va. Code § 8.01-271.1, and the Hospital's tortured

reading of those orders to encompass an award under § 8.01-271.1

is evidence of its bad faith:

> Despite these facts, in their reply in support of
> their MSJ (Dkt. No. 13), Respondents made a tortuous
> argument, intended to torture the Order that 1) because
> the second decretal paragraph mentions neither breach of
> contract nor sanctions as a basis for ordering that Akl
> pay the hospital costs and reasonable attorneys' fees; 2)
> because "certainly" the same paragraph does not state
> that it is premised solely on the contents of the second
> decretal paragraph; and 3) nothing in the latter states
> that it is limiting the basis for the second decretal
> paragraph; the only sensible conclusion to be drawn from
> the Order is that it means "what it says"-i.e., that it
> is based upon Defendants' "motion for sanctions" and "the
> entire record in the case," "which includes the bench
> ruling of Judge Kendrick, earlier that same day, imposing
> sanctions on Akl." In a footnote, Respondents noted that
> they attached the Judgment Order, and that it added
> nothing to the discussion. From the foregoing, the
> conclusion that can be drawn from Respondents' assertion
> is that if an order awards a party a certain amount of
> money and provides a basis for it in a certain paragraph,
> the paragraph determining the amount is an independent
> paragraph that, in order to be based solely on what was
> cited in the previous paragraph, has to re-specify the
> basis for the award and has to explicitly limit the award
> to the basis cited in the previous paragraph--otherwise
> there can be any number of bases for the award. This
> argument is beyond absurd and reeks of bad faith. Worse,

---

between Plaintiff, Ziad Akl, M.D., F.A.C.P., and
Defendant Virginia Hospital Center-Arlington Health
System, the motion for costs and reasonable attorneys'
fees is GRANTED; and it is further

ORDERED, that on October 2, 2006, this Court
awarded the Virginia Hospital System-Arlington Health
System a money judgment in the amount of $616,114.41
[Footnote continues on next page]
against Ziad Akl, M.D., F.A.C.P. Dr. Ziad Akl's
address of record is 4400 East-West Highway, #T112,
Bethesda, MD 20814. The judgment bears interest from
the date of the original judgment, October 2, 2006.

> it was counsel for the defendants who prepared both the
> Order and the Judgment Order and argued that the contract
> constituted a sufficient basis for awarding the money and
> that there was no need to reach the issue of statutory
> sanctions at the hearing of October 2, 2006.  Ex. 34 at
> 6:3-17.  No reasonable trier of fact could believe that
> counsel intended to base the monetary award on both the
> contract and the Virginia statute, and that to achieve
> that, they omitted, twice, to specify that the statute
> was also a basis for the award, simply relying on the
> facts that unless the second decretal paragraph re-
> specifies the basis for the award and explicitly limits
> the award to the basis cited in the previous paragraph,
> it is based on all reasons advanced in their motion.

Response at 78-79.  While the Hospital's and Potter's reading of

Judge Kendrick's orders might have been a stretch, the reading is

not "tortured," does not "reek[] of bad faith," and does not

otherwise provide a reasonable inference that Potter and the

Hospital filed the motion in bad faith.

Judge Kendrick's written order was a proposed order prepared

by counsel for the Hospital.  Opp. at 78.  Moreover, Judge

Kendrick signed the order moments after having found that Akl

violated Virginia Code 8.01-271.1 and barred him from filing any

further cases in the Circuit Court.  As I acknowledged at the

hearing on the Hospital's motion for summary judgment on the

nondischargeability complaint, Judge Kendrick's order was

ambiguous.  Tr. at 12.  This ambiguity coupled with Judge

Kendrick having opined on the propriety of awarding sanctions

under Virginia Code § 8.01-271.1 just moments earlier provided

the Respondents with a reasonable basis for having the court

determine that the written order encompassed a sanctions

determination.  Accordingly, this basis for defeating the motion also fails.

Akl next argues that Potter's failure to recite the elements of collateral estoppel in his motion for summary judgment is evidence that it was filed in bad faith "because a superficial review of those elements would immediately defeat his motion under the third element."  Opp. at 81-82.  Akl further notes that Potter was aware of the elements, as shown by his argument in the motion that the sanctions claim was actually litigated, but failed to address the determinative issue, the third prong of the collateral estoppel test, that the factual issue was essential to the judgment.  Potter's failure to cite these elements, Akl concludes, was "clearly intentional and denote[d] bad faith." Opp. at 83.

Akl is correct in that the Respondents' motion for summary judgment on the nondischargeability complaint focused solely on the second prong of the collateral estoppel test cited by Akl-- whether the party had a full and fair opportunity to litigate the issue, Motion for Sum. Jgmt. at 8 (Dkt. No. 13)--but this does not lead to a reasonable inference of bad faith.  A party moving for summary judgment is entitled to frame its motion however it sees fit: no mechanical, formulaic recitation of the elements of a cause of action or legal test is required.  Indeed, briefs in support of motions for summary judgment frequently focus only on

41

the issues which the moving party believes are in serious
dispute.  And, although I found the third prong of Virginia's
collateral estoppel test important, the Respondents' failure to
discuss it in their brief in support of their motion for summary
judgment at most leads to only an inference of negligence, not
bad faith.  Moreover, as their reply to Akl's opposition to the
motion for summary judgment demonstrates, the Respondents put
forth several good faith arguments that Judge Kendrick's oral
ruling and orders were entitled to collateral estoppel effect and
met the third prong of Virginia's collateral estoppel test.  The
mere fact that the Respondents failed to include these arguments
in their memorandum in support of the motion for summary judgment
is only indicative of their failure to sufficiently research the
relevant case law prior to filing the motion, which, again, at
most would show negligence.  Further, as I similarly observed
above, if the Respondents were truly intent on harassing Akl, as
he alleges in his sanctions motion, they could have submitted a
lengthy memorandum in support, detailing each element of
collateral estoppel and thereby forcing Akl's reply in kind and
the resulting increase in his legal fees.  Potter's failure
specifically to enumerate the elements of collateral estoppel was
not an attempt to mislead the court on a test of which it is well
aware, and Akl's arguments and evidence do not otherwise lead to
a reasonable inference of bad faith.  For these reasons, Akl's

third basis for defeating the Respondents' motion for summary
judgment on Akl's inherent authority sanctions claim for the
motion for summary judgment as to the nondischargeability
complaint fails.

Finally, and related to his third argument, Akl argues that
Potter's unfamiliarity with *Loudoun Hospital Center v. Stroub*, 50
Va. App. 478, 492 (2007), at the hearing on the Hospital's motion
for summary judgment as to the dischargeability complaint is
further evidence of the Respondents' bad faith.  Specifically,
Akl notes that *Loudoun* was the only case he cited in his
opposition setting forth Virginia's collateral estoppel standard
and that Potter ignored the case and instead focused on
"irrelevant arguments concerning the First and Second Restatement
of Judgments."  Opp. at 84-85.  These arguments, however, were
not irrelevant and, accordingly, do not demonstrate bad faith.

Whether collateral estoppel applied depended directly on
whether Virginia had adopted the First or Second Restatement view
as to whether alternative grounds for a judgment satisfied the
third prong of the four-prong test set forth in *Loudoun*.  *Whitley
v. Commonwealth*, 260 Va. 482 (2000), the case cited by the
*Loudoun* Court for the collateral estoppel test, cites to *Bates v.
Devers*, 214 Va. 667 (1974), as the modern origin of the Virginia
collateral estoppel test.  Importantly, *Bates* cites to the First
Restatement of Judgments for the following proposition:

43

"Collateral estoppel is the preclusive effect impacting in a subsequent action based upon a collateral and different cause of action.  In the subsequent action, the parties to the first action and their privies are precluded from litigating any issue of fact actually litigated **and essential** to a valid and final personal judgment in the first action." *Id.* at 671 (emphasis added).  Comment n to Section 68 of the First Restatement of Judgments, in turn, provides that when a judgment is founded on alternative grounds, it is preclusive as to both:

> Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.  Thus, if the defendant interposes two defenses on each of which issue is taken, and both of the issues are found in favor of the defendant, a judgment for the defendant is not based on one of the issues more than on the other; and it must be said either that both are material to the judgment or that neither is material.  It seems obvious that it should not be held that neither is material, and hence both should be held to be material.  Where the trial court bases the judgment upon two alternative grounds, and an appellate court affirms the judgment solely on one of the grounds, the judgment is not conclusive in a subsequent action in which the other ground is in issue.

First Restatement of Judgments § 68, cmt. n.  Which Restatement of Judgments applied was a central issue in determining whether collateral estoppel applied and, accordingly, Potter's focus on it at the hearing on the Hospital's summary judgment motion was appropriate and in no way indicative of bad faith.  Accordingly, this basis for defeating the motion likewise fails.

Akl having failed to come forward with sufficient evidence

44

demonstrating that the the Hospital's motion for summary judgment on its nondischargeability complaint was filed in bad faith, summary judgment as to Akl's inherent authority sanctions claims for the filing of the motion is appropriately granted.

C

Sanctions Under § 1927 for the Motion for Summary Judgment

The Respondents last move for summary judgment as to Akl's motion for sanctions under § 1927 against Potter for filing the motion for summary judgment on the Hospital's nondischargeability complaint.

Section 1927 of Title 28 of the United States Code provides that "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.*  The purpose of § 1927 is to allow the court "to assess attorneys' fees against an attorney who frustrates the progress of judicial proceedings." *United States v. Wallace*, 964 F.2d 1214, 1217 (D.C. Cir. 1992).  As observed in *Wallace*, 964 F.2d at 1220-21 (footnote omitted):

> Where courts have employed section 1927, the attorney's behavior has been repeated or singularly egregious.  For example, in *Fritz v. Honda Motor Co.*, 818 F.2d 924 (D.C. Cir. 1987), this court upheld section 1927 sanctions

45

where the attorney "repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation." *Id.* at 925; *see also Julien v. Zeringue*, 864 F.2d 1572, 1575-76 (Fed. Cir. 1989) (sanctioning attorney who "continually missed deadlines, requested at least 10 extensions of time to file his briefs, and submitted a joint appendix 11 months after he was given extensive and explicit instructions"); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc) ("section 1927 imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim"); *Toombs v. Leone*, 777 F.2d 465, 471-72 (9th Cir. 1985) (counsel sanctioned for deliberately failing to meet pretrial brief deadline and then filing, on morning of trial, 148-page trial brief and 34-page exhibit list).

Before imposing sanctions on an attorney under § 1927, the court must evaluate whether the attorney's conduct has been "*at least* reckless[.]" *Wallace*, 964 F.2d at 1217 (emphasis in original). Accordingly, "inadvertent, and negligent acts will not support an imposition of sanctions under section 1927." *Wallace*, 964 F.2d at 1219 (*quoting Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)); *see also Healey v. Labgold*, 231 F. Supp. 2d 64, 68 (D.D.C. 2002) ("A showing that counsel's behavior has been unreasonable and vexatious requires more than a showing of negligence. Instead, it requires a showing of deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores.") (citations and internal quotations omitted).

Such conduct that recklessly multiplies the proceedings in an unreasonable fashion is adequate to warrant a finding of

vexatiousness under § 1927. *Reliance Ins. Co. v. Sweeney Corp., Md.*, 792 F.2d 1137 (D.C. Cir. 1986). In *Reliance Ins.*, the Court of Appeals stated:

> While the language of § 1927 suggests deliberate misbehavior, subjective bad faith is not necessary; attorneys have been held accountable for decisions that reflect a reckless indifference to the merits of a claim. *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). We adopt these standards in the case at bar.

792 F.2d at 1138. That holding makes sense. The court already has authority pursuant to its inherent authority to sanction bad faith conduct, and § 1927 would add nothing if it requires a showing of bad faith. *See Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

The Court of Appeals later expressed the view that the law in the D.C. Circuit is unsettled as to whether a court must find subjective bad faith or merely recklessness to impose sanctions under § 1927. *See Wallace*, 964 F.2d at 1218-19.[12] However, the only D.C. Circuit decision cited in *Wallace* as suggesting that § 1927 requires subjective bad faith was *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 45 n.9 (D.C. Cir. 1990). Rule 11 sanctions, not § 1927 sanctions, were at issue in *Hilton Hotels*. The suggestion in *Hilton Hotels* (relegated to a footnote) was thus mere dictum, and is not enough to overturn the holding of

---

[12] *See also LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998), *cert. denied*, 525 U.S. 1071 (1999) (citing *Wallace* for this proposition).

*Reliance Ins. Co.*[13]  I have viewed myself as bound to follow the

holding of *Reliance Ins. Co.  See In re Greater Southeast Comm.*

*Hosp. Corp., I*, 2010 WL 3123086, at *1-2 (Bankr. D.D.C. August 9,

2010).

If only a showing of recklessness is needed for § 1927

sanctions, a party must demonstrate the opposition made a

"conscious choice of a course of action, either with knowledge of

the serious danger to others involved in it or with knowledge of

facts which would disclose this danger to any reasonable man."

*Wallace*, 964 F.2d at 1220 (quoting *Restatement (Second) of Torts*,

§ 500 cmt. G (1964)).  This standard is a higher bar than

negligence, which "consists in mere inadvertence, incompetence,

unskillfulness, or a failure to take precautions to enable the

actor adequately to cope with a possible or probable future

emergency."  *Id.*

The standards of bad faith and recklessness are similar and

distinguishable; although both involve a general, deliberate

action in the face of a risk, a bad faith actor intends the "bad"

consequence to come about, such as the needless delay of

proceedings, whereas a reckless actor knows of but is indifferent

to the risk of the "bad" consequence.  *See id.* at 1219-20.

---

[13]   The holding in *Reliance Ins. Co.* was viewed as being a
holding, not dictum, by at least one commentator.  *See* Josselyn,
*The Song of the Sirens-Sanctioning Lawyers under 28 U.S.C.
§ 1927*, 31 B.C. L. Rev. 477, 489 (1990).

In the motion for summary judgment, Potter contends that
judgment in his favor on this claim is appropriate because a
colorable motion for summary judgment filed early in the case
could not, as a matter of law, have multiplied proceedings.  Mem.
at 16.  I agree with Potter and, accordingly, address whether the
motion had a colorable basis.

The Hospital's motion for summary judgment on its
nondischargeability complaint was, in Potter's own words, a
simple motion: "[It's] very simple. [It] say[s] that Judge
Kendrick, the state court judge in Virginia, issued a sanctions
ruling against Dr. Akl, and that that sanctions ruling was, as a
matter of law, nondischargeable.  That's all [it] say[s]."  Tr.
1/11/2011 hearing at 7 (Dkt. No. 201).  While factually Potter's
statement is correct, legally, the motion presented several
complicated issues.

First, the motion required the court to determine whether
Judge Kendrick had actually found Akl violated Virginia Code
§ 8.01-271.1.  Tr. 3/12/2008 hearing at 5.  Judge Kendrick's
written orders of October 2, 2006, and May 18, 2007, that the
Hospital relied upon in its motion for summary judgment as to its
nondischargeability complaint provided, respectively, that
attorney's fees were granted "pursuant to the contract entered
into between Plaintiff and Defendant Virginia Hospital Center-
Arlington . . . ." and "pursuant to the contract entered into

49

between Plaintiff, Ziad Akl, M.D., F.A.C.P., and Defendant

Virginia Hospital Center-Arlington Health System," with no

mention of Virginia Code § 8.01-271.1.  To get over this hurdle,

Potter argued at the hearing on the motion that the orders were

ambiguous and included Judge Kendrick's oral ruling finding that

Akl had violated Virginia Code § 8.01-271.1:

> [T]he order indicates it's based upon the motion for
> sanctions.   It goes on to say it's based upon the
> opposition, the oral argument, the evidence presented to
> the Court, and the entire record in the case, which would
> include, by definition, the Judge's bench ruling made
> earlier the very same day that this was--this order was
> entered
> That   is  the  premise  upon  which  this  order  was
> entered.  We believe a fair interpretation of the order
> is that the Judge is incorporating those items, including
> the record, including the Judge's bench ruling earlier
> that same day, and acknowledge that the second paragraph
> in the order, the first ordered paragraph, indicates that
> it is granting motion for costs pursuant to contract.
> And then the final paragraph, Your Honor, is not
> limited in any fashion.   It's not limited by the
> preceding ordered paragraph, and the preceding order
> paragraph doesn't impose any limitations based upon the--
> The preceding order paragraph doesn't in some way
> indicate that it's affecting or limiting the final
> ordered paragraph.

*Id*. at 7.  Ultimately, I disagreed with Potter on this issue and

found that the judgment "rest[ed] upon breach of contract or a

contractual entitlement to attorney's fees and reasonable--and

costs, and not a judgment that rests upon violation of the

Virginia statute."  *Id.* at 64.

Second, even if the orders did encompass Judge Kendrick's

oral ruling that Akl had violated Virginia Code § 8.01-271.1, the

motion next required the court to determine whether the oral

ruling established that the debt was a nondischargeable debt

under § 523(a)(6) of the Bankruptcy Code.  Potter argued that

Judge Kendrick's unambiguous language established that it was:

> I think that if you look at this from a plain English,
> and a sort of logical structure of the way it is said,
> the Court is--Judge Kendrick is stating that this statute
> was designed to do certain things.  It may have been
> designed to do things or to protect parties in interest
> beyond those described by Judge Kendrick, and he lists
> them out.
>
> To prevent mental anguish.  To prevent expense
> caused by frivolous assertions, by unfounded--by the
> making of unfounded facts, by the making of unfounded
> legal claims, and claims for--making claims for improper
> purposes, and to protect this Court, as the Virginia
> Court, from those who would abuse the judicial process.
>
> He's giving a--I read this as him giving a litany of
> things that he's picking out of the statute for which
> it's designed, and then he comes in the next sentence and
> says after an exhaustive review of the record he finds
> that Dr. Akl has violated the very nature and basis for
> which this code section was designed and implemented.
>
> I read that as, "I gave you a list of things that
> are on my mind," in terms of what the statute is designed
> to protect against, and he's violated those--every one of
> those items, every one of them."
>
> . . . .
>
> I--I've--It's pretty clear that he's frustrated,
> he's upset.  He has--He's reviewed a record.  He has
> knowledge of the facts.  He's articulating, quite well,
> a litany of standards, and clearly is saying that those
> standards have all been--In my view, he's clearly saying
> that all those standards have been violated.

*Id.* at 16.  I rejected this argument, however, and found even if

Judge Kendrick had made a determination that Akl violated

Virginia Code § 8.01-271.1 that finding could have been made

based on a lack of "adequate factual inquiry and inadequate

inquiry into whether the legal claims [were] valid," which would

51

not make the debt a nondischargeable debt under § 523(a)(6). *Id.*
at 67-68.

Finally, even if Judge Kendrick's orders encompassed his
oral ruling and even if that oral ruling was sufficient to have
the debt declared nondischargeable under § 523(a)(6), the final
issue was whether that ruling was entitled to collateral estoppel
effect.  In this respect, Potter made two arguments.  First, as I
discussed previously, Potter contended that Virginia applied the
First Restatement of Judgments. Reply Mem. at 6-9.  Second,
Potter argued that because Akl appealed Judge Kendrick's decision
to the Virginia Supreme Court, under either Restatement's
approach, Judge Kendrick's order was entitled to collateral
estoppel effect.  Reply mem. at 9-10.  I rejected Potter's
Virginia Supreme Court argument, finding that the Virginia
Supreme Court never addressed the statutory sanctions issue, and
I did not address the issue of which Restatement otherwise
applied under Virginia law.  Tr. at 64.

Potter put forth colorable legal arguments on all three
issues.  First, regarding the scope of Judge Kendrick's orders,
Potter had a colorable basis for contending that they encompassed
the oral ruling.  As I observed at the hearing on the Hospital's
motion for summary judgment on the nondischargeability complaint,
Judge Kendrick's orders were ambiguous.  *Id.* at 12.  Although I
resolved the ambiguity in Akl's favor, Potter's argument was not

so baseless as to lead to a reasonable inference of recklessness.
Second, regarding whether the oral ruling by itself established
that the debt was nondischargeable, Potter's contention that
Judge Kendrick was "giving a litany of things that he's picking
out of the statute" and that Akl had "violated those--every one
of those items, every one of them" was similarly colorable.
Again, although I resolved the issue in Akl's favor, Potter's
interpretation of the ruling was not so unreasonable as to lead
to an inference of recklessness.  Finally, Potter's argument as
to the collateral estoppel effect of alternative judgments in
Virginia was in good faith.  Particularly, Potter's reply brief
demonstrates that there is an unresolved question in Virginia
case law as to whether the state follows the First Restatement of
Judgments or the Second Restatement.  While I did not reach the
issue, instead resolving the motion on the threshold question of
whether Judge Kendrick's orders incorporated his oral ruling,
Potter's presented a colorable argument on the collateral
estoppel issue.

Is his opposition to the Respondent's motion for summary
judgment, Akl conclusorily states that under either the
recklessness or bad faith standard that "the record is clear that
. . . a reasonable trier of fact would find that genuine issues
of material facts exist necessitating a trial."  Opp. at 87.  But
the record does not clearly show bad faith or recklessness or

even provide a reasonable inference that a genuine issue of material fact exists on the issue.

As I found above, Akl has presented insufficient evidence that would allow a reasonable finder of fact to determine that there is a material fact in dispute as to whether the motion for summary judgment was filed in bad faith.  Likewise, Akl has come forward with no evidence that Potter acted recklessly in filing the motion.  A finding of recklessness would require that Potter made a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." *Wallace*, 964 F.2d at 1220.  Akl has presented no evidence in this regard.  Moreover, Akl makes no effort to address Potter's contention that a colorable motion for summary judgment filed early in the proceeding could not, as a matter of law, multiply proceedings.

Akl having failed to produce any evidence showing that the motion for summary judgment was filed either in bad faith or recklessly, judgment in Potter's favor on the § 1927 claim is appropriate.


IV

For the foregoing reasons, I find summary judgment in favor of the Respondents on all of Akl's sanctions claims appropriate.

A separate order follows.

[Signed and dated above.]

Copies to: All counsel of record.