# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ZIAD AKL, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 11-1449 (ABJ) |
| ) | |
| VIRGINIA HOSPITAL CENTER, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

## <u>MEMORANDUM OPINION</u>

Appellant Dr. Ziad Akl brings this appeal from a final judgment in the United States Bankruptcy Court for the District of Columbia. Akl has filed twelve unsuccessful actions against appellee Virginia Hospital Center ("VHC," "hospital"), and individuals associated with it, in state and federal courts in Virginia, Maryland, and Washington, D.C. stemming from his loss of medical privileges at the hospital. In three of those cases, which were consolidated before the Arlington Circuit Court, the court awarded VHC costs and attorneys' fees. Part 1 of Bankr. Record ("BR I") [Dkt. # 2] at 558–81. Akl subsequently filed for Chapter 7 bankruptcy, and VHC filed an action in the bankruptcy court alleging that the fee award constituted an award of sanctions that should not be automatically discharged in Akl's bankruptcy proceedings under the United States Bankruptcy Code. The bankruptcy court denied VHC's motion for summary judgment on its complaint, and VHC subsequently moved to voluntarily dismiss its action. However, shortly after the court dismissed the case, Akl filed a motion in the bankruptcy court requesting sanctions against the hospital and its attorneys for filing the complaint and the motion for summary judgment in the first place. After granting in part and denying in part a motion to

"dismiss, strike, or otherwise deny" the sanctions motion, the bankruptcy court ultimately granted summary judgment for the hospital as to sanctions and denied the sanctions motion in full.  Part 4 of Bankr. Record ("BR IV") [Dkt. # 2-3] at 975.

Akl now appeals the bankruptcy court's orders granting summary judgment and denying the motion for sanctions.  He also appeals a separate order of the bankruptcy court granting appellee's motion for protective order and denying Akl's motion to compel discovery in connection with the sanctions motion.  Because the Court finds that the bankruptcy court did not abuse its discretion in determining that appellee's conduct did not warrant sanctions and in denying discovery, the Court will deny Akl's appeal.

## BACKGROUND

Appellant Ziad Akl was a physician at VHC until 2004, when his medical staff appointment was revoked.  Appellant's Brief ("Appellant's Br.") at 2.  Since that time, Akl has filed twelve actions against the hospital, and individuals associated with the hospital, as well as judges and court staff who played roles in those cases.  *See* Appellee's Brief ("Appellee's Br.") at 4–5, 5 n.4.  The motion underlying this appeal arose out of the resolution of three of those cases, which Akl refers to as "*Akl I–III*."  *See* Appellant's Br. at 3–4; *accord* Appellee's Br. at 4–5.  These cases were all filed in the Arlington Circuit Court and consolidated before Judge Alfred Swersky, and later Judge Benjamin Kendrick.  *See* BR I at 250–51.  The complaint in *Akl I* named as defendants VHC, its CEO, and six physicians involved in the hospital's peer review process, and it alleged denial of due process, breach of contract, tortious interference with economic relationships, defamation and civil conspiracy arising from the termination of his hospital privileges. *Id.* at 189–206. The complaint in *Akl II* named as defendants two nurses who had filed complaints against Akl that led to the termination of his hospital privileges, and it

alleged defamation, tortious interference with economic relationships, and civil conspiracy. *Id.* at 211–26. The complaint in *Akl III* named as a defendant the president of the firm with which Akl was previously employed, and it alleged similar claims. *Id.* at 231–45.

The Arlington Circuit Court dismissed all of Akl's claims except for breach of contract and defamation. After a period of discovery during which Akl took nineteen depositions and obtained extensive document production, Appellant's Br. at 5, and after several unfavorable rulings, Akl voluntarily dismissed the remaining claims. *Id.* at 5; *accord* Appellee's Br. at 5; BR I at 139–41.[1]

The defendants in those cases subsequently filed a motion to recover the legal fees and costs incurred in the defense of the actions and certain others that Akl had filed arising from the same series of events. BR I at 67–68. The motion advanced two grounds for VHC's entitlement to fees: (1) Virginia Code 8.01-271.1 – which authorizes the imposition of sanctions for frivolous submissions to the court made with an improper purpose; and (2) the terms of the contract between Dr. Akl and the hospital. At an oral hearing on the motion, Judge Kendrick of the Arlington Circuit Court stated on the record:

> The contract that Dr. Akl entered into with Virginia Hospital Center is a legal and sufficient basis for the attorneys to seek sanctions against the doctor. Virginia Code [8.01-271.1], which was designed to protect litigants from the mental anguish and the expense of frivolous assertions of unfounded factual and legal claims[,] against the assertions of claims for improper purposes, and to protect courts against those who would abuse the judicial process, is also a legal and sufficient and legitimate basis to award sanctions against this litigant [Akl]. The Court finds after an exhaust[ive] review of this record that he [Akl], in fact, has violated the very nature and basis for which this code section was designed and implemented . . . .

---

1     Those claims were subsequently re-filed in the Virginia federal court and were dismissed on the merits. Part 2 of Bankr. Record ("BR II") [Dkt. # 2-1] at 855–58; *see also* Part 3 of Bankr. Record ("BR III") [Dkt. # 2-2] at 564–65 (statement by appellee's counsel at motions hearing on motion to quash protective order in bankruptcy proceeding).

BR I at 70–71.  However, the written order signed by the court made no mention of Virginia Code 8.01-271.1 or sanctions, and it stated that defendants' motion for costs and reasonable attorney's fees was granted "pursuant to the contract entered into between Plaintiff and Defendant Virginia Hospital Center-Arlington."  BR I at 34–35, 133–35.[2]

Approximately seven months after the Arlington court issued this Order, Akl filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of Columbia.  VHC proceeded to file a complaint with the bankruptcy court pursuant to section 523(a)(6) of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, seeking to prevent Akl from receiving an automatic discharge of the fees and costs award.  The hospital moved for summary judgment, arguing that the Arlington Circuit Court's award constituted a sanctions judgment, that the bankruptcy court should apply collateral estoppel to the judgment to prevent re-litigation of the issues giving rise to it, and that the bankruptcy court should except the judgment from Akl's bankruptcy discharge under the bankruptcy code and applicable case law.  *See* BR I at 178–86.

The bankruptcy court denied the hospital's motion for summary judgment.  BR IV at 912.  It found that notwithstanding the Judge Kendrick's comments on the record, the fee award was based on Akl's contract, and therefore, it was not an award of sanctions.  *Id*. at 64–65.  It therefore declined to find that the hospital was entitled to judgment as a matter of law.  *Id*. at 67.  The hospital then filed a motion to voluntarily dismiss its action, which the bankruptcy court

---

2      The order was amended on May 18, 2007 – a day after Akl filed for Chapter 7 bankruptcy – to correct a clerical mistake.  BR I at 136–38.

granted.[3]  Part 2 of Bankr. Record ("BR II") [Dkt. # 2-1] at 541.  That was the end of the
hospital's participation in the bankruptcy proceeding.

Shortly after the bankruptcy court dismissed the hospital's action, Akl filed a motion for
sanctions invoking 28 U.S.C. section 1927 and the court's inherent power to sanction the
hospital and its counsel.[4]  *Id.* at 545.  Akl argued that the nondischargeability action and the
motions filed in furtherance of it were without merit and intended to harass him.  *Id.* at 1–2.  He
asserted that the filing of the complaint, motion for summary judgment, and motion to quash
were each sanctionable conduct by the hospital and its attorneys.  *Id.*

VHC filed a motion to "strike, dismiss, and otherwise deny" the motion, BR II at 869,
which the court granted as to one attorney for the hospital, but denied as to the hospital and its
other attorneys.  Part 3 of Bankr. Record ("BR III") [Dkt. # 2-2] at 182–95.[5]  The court also
ordered the hospital to file an opposition to Akl's motion for sanctions.  *Id.* at 194.  While the
hospital did eventually file an opposition, *id.* at 297–311, it first filed a motion to partially
reconsider, alter, amend, and alternatively clarify the Court's memorandum decision and order.
*Id.* at 196–218.

The bankruptcy court granted the motion for reconsideration in part and denied it in part.
BR III at 586–606.  It modified its original order to dismiss the claims against another of the

---

3    Akl also moved to defer ruling on the motion to dismiss until he had an opportunity to
file a counterclaim, moved for leave to file a counterclaim, and moved to have the court issue an
order to show cause why the plaintiff should not be held in criminal contempt.  The bankruptcy
court denied all three motions.  BR I at 542; BR II at 542–43; *see also* BR III at 587–88.

4    Akl also filed separate actions in another court in this district as well as in the D.C.
Superior Court challenging appellee for having filed the complaint and summary judgment
motion in the bankruptcy court.  *See* BR III at 400–01.

5    Akl also filed at least three supplements to the motion for sanctions.  *See* Supps. To
Def.'s Mot. for Sanctions, *Va. Hosp. Ctr. v. Akl*, No. 07-20026 (Bankr. D.D.C. 2007) [Dkt. #
132, 134, 179].

hospital's attorneys, dismiss Akl's section 1927 claim for the filing of the complaint, and dismiss

Akl's section 1927 and inherent authority sanctions claims for the motion to quash.  *Id.* at 604–

05.  It identified the remaining issues as:

> (1) sanctions under the court's inherent authority for the filing of the complaint
> against Potter [VHC's attorney] and Virginia Hospital; (2) sanctions under § 1927
> against Potter for the filing of the motion for summary judgment, except to the
> extent Akl argues the motion is sanctionable merely because it was in furtherance
> of the adversary proceeding; and (3) sanctions under the court's inherent authority
> against Potter and Virginia Hospital for the filing of the motion for summary
> judgment.

*Id.* at 605.

While the motion for reconsideration was pending, Akl attempted to initiate discovery.

BR III at 401–02.  In response, VHC moved for a protective order preventing Akl from

conducting discovery pending further order of the court. *Id.* at 398–454.  Akl opposed VHC's

motion and filed a motion to compel discovery.  *Id.* at 472.  The bankruptcy court granted the

motion for protective order and denied Akl's motion to compel discovery.  *Id.* at 950–51; BR IV

at 149–150.

VHC next filed what it labeled a motion for summary judgment as to sanctions.  BR III at

739.  Once the motion was fully briefed, the bankruptcy court issued an order granting VHC's

motion in full, accompanied by a 55-page memorandum opinion explaining its decision. BR IV

at 922–80.  It subsequently issued an order denying Akl's motion for sanctions.  It is those

orders, as well as the order denying Akl discovery on the sanctions issue, that Akl now appeals.

Akl filed this appeal on August 10, 2011, and the Court held oral argument on May 16, 2012.[6]

The appeal presents the questions whether the bankruptcy court erred in: 1) denying

appellant's motion for sanctions under 28 U.S.C. § 1927 and the court's inherent authority;

---

[6]    The Court began the oral argument, as it often does, with an introductory statement summarizing the procedural posture of the case, enumerating the issues before the Court to resolve and the standards governing those issues, and identifying certain issues that were not properly for the Court.  Transcript of Oral Argument ("Tr.") at 1:15–7:5 (May 16, 2012).  Akl filed a supplemental memorandum the next day, arguing that at the oral argument the Court unfairly framed the issues that were before it and therefore denied him the opportunity to "delve into" relevant issues and parts of the record.  [Dkt. # 15].  Notwithstanding the fact that the memorandum was filed without leave of the Court, in violation of Federal Rule of Bankruptcy Procedure 8009(a)(3) and Federal Rule of Civil Procedure 15(d), the Court did not strike it, but considered it in connection with all of the other pleadings in the matter.  *See* Minute Order (May 17, 2012).  In connection with the complaints voiced in the memorandum, though, the Court notes the following:  First, appellant was not automatically entitled to an oral hearing in this case at all.  *See* LCvR 78.1 (The allowance of an oral hearing "shall be within the discretion of the court.").  Second, appellant has filed a brief and a reply brief, both of which the Court had thoroughly read and considered in advance of the hearing.  Third, at the hearing, the Court specifically invited the parties to weigh in if they believed that the Court had not accurately framed the issues.  Tr. at 7:1–5 (Court:  "Obviously, if I have incorrectly framed the issues, you should let me know that . . . .").  Counsel for appellee accepted this invitation and offered a minor correction to the Court's framing of the issues.  *Id.* at 21:12–16 (Ms. Baum:  "I had one minor observation with respect to Your Honor's framing of the issues . . . .  The Court:  Feel free to correct me, it's okay.").  But appellant's counsel did not dispute the Court's framing of the issues, either during his argument or his rebuttal.  Indeed, he thanked the Court.  *Id.* at 7:7–8 (Mr. Troy:  "Thank you for that.  It will save a lot of time.").  Finally, after the Court finished asking its prepared questions, it gave appellant's counsel an opportunity to go back to his notes and raise any issues that he had not yet had an opportunity to address.  Still, appellant's counsel did not raise the issues that he complains the Court denied him the opportunity to discuss.  *Id.* at 16:14–16 (The Court:  "Okay.  All right.  I've asked you a lot of questions.  So if there's things on your outline that you wanted to cover, I want to make sure that I hear them."); *id.* at 20:4 (The Court:  "Okay.  All right.  Is there anything else that you need to tell me that we haven't covered?  Mr. Troy:  Not at this time.").  Nonetheless, the Court will address the issues Akl raises in his supplemental memorandum, most of which repeat arguments that appellant already made in his brief and reply.

2) granting appellee's motion for protective order and denying appellant's motion to compel discovery.[7]

### ORDER GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS TO SANCTIONS AND DENYING APPELLANT'S MOTION FOR SANCTIONS

### I.     Standard of Review

On appeal, a court reviews the decision whether to award sanctions under an abuse of discretion standard.  *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 904 (D.C. Cir. 1998) (section 1927); *In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999) ("The standard of review concerning a Bankruptcy Court's denial of sanctions is abuse of discretion."); *see also In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996) (district court reviews a bankruptcy court's sanctions decision under a "clear abuse of discretion" standard).   Orders on motions for summary judgment, however, are reviewed *de novo*.  *United States v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995).   Here, while the appeal is taken on the bankruptcy court's decision regarding a motion for sanctions, the parties briefed, and the court decided, the sanctions issue on a motion for summary judgment.[8]   So the parties now disagree on what level of deference the Court should accord the bankruptcy court's decision.

While neither side has provided the Court with any precedent that is squarely on point, the Court finds the bankruptcy court's decision to be more akin to an order on a motion for

---

7     Appellant frames the appeal as raising a separate issue of whether the bankruptcy court erred in granting appellee's motion for summary judgment as to sanctions, but this Court will treat the summary judgment order as a sub-issue under the first question presented.

8     Although the bankruptcy court disposed of parts of Akl's motion for sanctions on VHC's motion to dismiss, strike, or otherwise dispose of the motion for sanctions, and on VHC's motion to reconsider the court's order on the motion to dismiss, Akl appeals only the order on VHC's motion for summary judgment and the order denying defendant's motion for sanctions, not the order on the motion to dismiss.  Notice of Appeal [Dkt. # 1] at 5.

sanctions than on a motion for summary judgment. The issue that the bankruptcy court was considering was not dispositive, but was merely collateral to the claims raised in the complaint. Furthermore, the Supreme Court has found that appellate courts must defer to the trial court's *legal* findings in proceedings for sanctions, not just their factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399–405 (1990) (Rule 11 sanctions);[9] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (inherent authority sanctions); *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (inherent authority sanctions). Therefore, the Court will review the bankruptcy court's decision under an abuse of discretion standard.[10]

### A. Abuse of Discretion

A trial court has abused its discretion if it "did not apply the correct legal standard or misapprehended the underlying substantive law" or if its ruling was not "within the scope of permissible alternatives in light of the relevant factors and the reasons given to support it." *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006). The court "necessarily abuse[s] its

---

9      The Court finds it irrelevant that the *Cooter* decision concerned Rule 11 sanctions while this case concerns Section 1927 and inherent authority sanctions. In *Cooter*, the Court put significant emphasis on considerations that apply equally to the section 1927 and inherent authority sanction context: the legal questions rely heavily on the factual circumstances of the case; the court must make determinations about whether particular legal arguments appeared "plausible" or were "reasonable" at the time they were made; the legal questions presented are not easily generalizeable to other factual scenarios; deference to the determination of courts "on the front lines of litigation" will enhance those courts' ability to control the litigants before them and deter baseless filings before them. *Id.* at 401–04. In addition, the Court emphasized the significance that an abuse of discretion standard would not preclude an appellate court from correcting a district court's legal errors since a trial court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 405. Also, the Supreme Court has expressly ruled that sanctions under the court's inherent power are reviewed for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) ("We review a court's imposition of sanctions under its inherent power for abuse of discretion.").

10      The Court notes, however, that even if it were to review the bankruptcy court's decision *de novo*, it would reach the same decision.

discretion if it base[s] its ruling on an erroneous view of the law." *Cooter*, 496 U.S. at 405.

However, "[i]f the court's account of the evidence is plausible in light of the record viewed in its

entirety, the court of appeals may not reverse it even though convinced that had it been sitting as

the trier of fact, it would have weighed the evidence differently." *Anderson v. Bessemer City*,

470 U.S. 564, 573–74 (1985).

B. <u>Summary Judgment</u>

As discussed above, this Court must determine whether the lower court applied the

correct legal standard. And since the bankruptcy court decided the sanctions motion on

summary judgment, it is appropriate at this juncture to set out the standard for summary

judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party seeking summary judgment bears the "initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat

summary judgment, the non-moving party must "designate specific facts showing there is a

genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual

dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the

non-moving party; a fact is only "material" if it is capable of affecting the outcome of the

litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In

addition, the moving party is entitled to a judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## II.    Analysis

At the outset, the Court observes that appellant challenges "every aspect" of the bankruptcy court's memorandum opinion and order granting summary judgment for VHC as to sanctions. Appellant's Supp. Mem. [Dkt. # 15] at 7; Tr. at 14:17–15:4.[11] In his briefs and at the oral argument, counsel for Akl urged the Court to overturn every single legal and factual determination in the bankruptcy court's fifty-five page opinion. *Id.*

Since many of Akl's arguments rely on the assumption that appellee was engaged in fraud, the Court will address Akl's fraud allegations before turning to his specific arguments.[12] Akl asserts throughout his brief and supplemental memorandum that in the sanctions

---

11    The Court: Is there anything that you think [the bankruptcy judge] was right about? You have said that he was wrong about every single thing.

Mr. Troy: No, I don't think he was right about one thing.

The Court: You don't think he was right about one thing?

Mr. Troy: No.

12    In addition, this is one of the issues that appellant argues the Court denied him the opportunity to address at the oral argument. Again, the Court notes that the decision whether to hold an oral argument was entirely within the discretion of the Court, and the Court was similarly entitled to limit arguments to whichever issues it was most concerned with. Nonetheless, the Court will consider the additional arguments that he provides on this point in his supplemental memorandum.

proceedings, he presented evidence that appellee perpetrated fraud on the courts by submitting

falsified documents, and that the hospital and its attorneys fraudulently colluded with the judges

on the Arlington Circuit Court – Judges Swersky and Kendrick.  However, the bankruptcy court

rejected Akl's allegations of fraud, finding that Akl presented nothing more than mere

conclusory assertions, and that the issue of fraud was barred by the *Rooker-Feldman* doctrine in

any event.  BR IV at 945–46.

      This Court finds that the bankruptcy court did not err in rejecting Akl's allegations of

fraud.  Like the bankruptcy court, this Court has gone through the entire record in this case and

found no facts that would suggest that appellee engaged in collusion with judges on the

Arlington Circuit Court or submitted anything fraudulent to the Arlington court.  The only

specific evidence that Akl submitted to the bankruptcy court in his opposition to the motion for

summary judgment as to sanctions – invoices submitted by hospital counsel to the court – do not

support Akl's claims of fraud.  *See* BR IV at 81–83.[13]  Furthermore, appellant's brief, reply brief,

and supplemental memorandum in this case all fail to point to any facts in the record that could

be construed as evidence of fraud, even giving Akl the benefit of all inferences in his favor.  The

pleadings frequently refer to Akl's "evidence" of fraud, but nowhere does he actually identify

---

[13]    Akl argues that redactions in the invoices show evidence of fraud and *ex parte*
communications between the hospital or its attorneys and the Arlington Circuit Court.  However,
the bankruptcy court found no evidence of fraud in the record, and this Court cannot find that its
determination was in error, let alone an abuse of discretion, based on the hospital invoices that
are attached as appendices to Akl's opposition.

what that evidence is.[14]  Moreover, Akl's conspiracy allegations are barred by the *Rooker-Feldman* doctrine.[15]  Therefore, this Court agrees with the bankruptcy court that Akl failed to

---

[14]     *See, e.g.*, Appellant's Br. at 19 ("Even worse, basing a complaint on what a judge said with the knowledge that the statement was extracted through corruption and conspiracy with the judge is actually criminal contempt."); *id.* at 21 ("In its motion for sanctions, Akl argued that Judge Alfred Swersky, who presided over Akl I, II, and III, was clearly in league with the defendants in the actions and was intent on dismissing the case on summary judgment. . . . Akl also argued that VHC, along with Judge Swersky, corrupted Judge Kendrick who entered the monetary judgment against Akl.  Akl offered substantial evidence to that effect."  The evidence that Akl submitted in support of his allegations that VHC, its counsel, and Judges Swersky and Kendrick were in cahoots with each other is extensive and damning . . . ."); *id.* at 22 (the bankruptcy court's ruling was made "in the face of allegations and evidence of misconduct by that Judge with VHC's and its counsel's knowledge."  "[T]here are two aspects to Akl's allegations of fraud.  Allegations of fraud by VHC and its counsel *upon* the Arlington Court, and allegations of fraud through a conspiracy *with* the court.  The former was accomplished through the submission of fabricated documents and through false representations to the Arlington Court."  "VHC and its counsel committed fraud upon the Arlington Court and caused it, by submitting false documents to it and making misrepresentations to it that the peer-review process was spotless, to reach a conclusion that Akl violated Va. Code § 8.01-271.1 . . . ."); *id.* at 23 ("Appellees knew that Judge Kendrick's statement was made pursuant to an extra-judicial agreement with VHC and its counsel, . . . they knew that Judge Kendrick did not believe what he said when he said it, and they knew that Judge Kendrick was merely stating what he and his co-conspirators had agreed upon."); *id.* at 29 ("[VHC and its counsel] knew that the judgment they obtained from the Arlington Court was fraudulent."); *id.* at 34 ("Appellant provided ample evidence that the Arlington Court proceedings were corrupted, Opp. at 65–70 . . . ."); *id.* at 35 ("As stated above, the Appellees corrupted the Arlington Court . . . ."); *id.* at 36–37 ("[Appellees] were the ones who corrupted the Arlington Court . . . ."); *id.* at 37 ("It is as if the Bk. Court has hard time (sic) believing that a judge could be corrupt or be corrupted.  This was evidenced by the Bk. Court's clear irritation when Akl mentioned the issue at the January 11, 2011 hearing on the motion for protective order."); *id.* at 41 ("The mere fact that he issued the Judgment Order in violation of the stay supports the evidence presented by Akl that he was in league with VHC . . . ."); *id.* at 49 ("Akl alleged that the judgment used to initiate this suit was obtained through fraud – thus, the filing of the Complaint constitutes fraud upon the Bk. Court."); Appellant's Reply at 5 ("It is further clear from the large amount of evidence that Akl, contrary to what Appellees assert, *did submit* in conjunction with his opposition to the motion for summary judgment as to sanctions."); Appellant's Supp. Mem. at 3 ("The Court seemed unconcerned with Appellant's allegations of fraud in previous proceedings and the use in this Court of a judgment obtained by fraud).

present any evidence of fraud that would raise a genuine dispute of material fact.  Accordingly,

in the following discussion of Akl's arguments for why the bankruptcy court erred by finding no

evidence of bad faith, the Court will not further consider any basis sounding in fraud.

### A.  Sanctions under the court's inherent authority for the filing of the complaint

Courts have an inherent power "to protect their integrity and prevent abuses of the

judicial process."  *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469 (D.C. Cir. 1995), citing

*Chambers*, 501 U.S. at 46.  This includes the authority to assess attorney's fees against a party

who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Alyeska Pipeline*

*Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975).  The bankruptcy court correctly

recited the standard for imposing sanctions under the court's inherent authority:  First, the court

"'must find some connection between the sanctioned conduct and a process of the court in the

litigation before it.' . . .  Second, the court 'must make an explicit finding that [the target of the

---

15      Akl passionately asserts that his claims are not barred by the *Rooker-Feldman* doctrine
because Akl did not ask the bankruptcy court to reject the Arlington Circuit Court's judgment,
but only "to examine the process by which it was obtained."  Appellant's Br. at 25; Appellant's
Reply at 8–10; Appellant's Supp. Mem. at 3–4.  The *Rooker-Feldman* doctrine bars a federal
court from exercising jurisdiction over "cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the district court proceedings
commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil*
*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The bankruptcy court cited *Akl v.*
*Swersky*, No. 1:06-cv00964 (E.D. Va. Dec. 22, 2006) as support for the applicability of the
*Rooker-Feldman* doctrine.  BR IV at 946.  In that case, a court in the Eastern District of Virginia
held that Akl's section 1983 due process and equal protection claims, which asserted the same
fraud and conspiracy allegations that Akl asserts here, were barred by *Rooker-Feldman*.  The
court noted that *Rooker-Feldman* is inapplicable if the people involved in the state court decision
violated some independent right of the litigant, but it found that "Akl's conclusory allegations
simply do not articulate an independent right, nor do they constitute an independent claim,
capable of being redressed by this court.  In the end, his allegations before this court equate to an
attack on the decisions of the state court."   Mem. Op., No. 1:06cv00964 (E.D. Va. Dec. 22,
2006).  It was not an abuse of the bankruptcy court's discretion to find that Akl's allegations in
the case before it were similarly mere attempts to invite federal court review and rejection of the
Arlington Circuit Court's judgments against him and that they were similarly barred by *Rooker-*
*Feldman*.  *See also Richardson v. Dist. of Columbia*, 711 F. Supp. 2d 115, 120–23 (D.D.C. 2010)
(explaining how *Rooker-Feldman* applies after the *Exxon Mobil* decision).

sanctions] acted in bad faith.'" BR IV at 933 (alterations in original), citing *Alexander v. FBI*, 541 F. Supp. 2d 274, 303 (D.D.C. 2008); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (the court must make a specific finding of bad faith before imposing any sanction under its inherent powers); *United States v. Wallace*, 964 F.2d 1214, 1217 (D.C. Cir. 1992) (same). Only the second part – the showing of bad faith – is at issue here.

The bankruptcy court looked for bad faith both "indirectly through evidence of objective actions that lead to an inference of subjective [improper motive] – such as filing a document with the court that is plainly frivolous, lacking even a colorable basis in law or fact," and "directly through evidence of subjective [improper motive]." BR IV at 935, citing *In re Greater Se. Cmty. Hosp. Corp., I*, No. 02-02250, 2010 WL 3123086, at *3 (Bankr. D.D.C. Aug. 9, 2010); *see also Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982) ("[T]here must be clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes.") (internal quotation marks omitted). It found no objective or subjective indications of bad faith. Rather it found that Judge Kendrick's ruling alone provided a colorable basis for appellee's nondischargeability arguments, and that Akl presented no evidence of subjective bad faith other than conclusory statements. Akl's arguments in the instant case all seek to persuade the Court that Akl presented enough evidence to at least create a genuine factual dispute over whether appellee *was aware* that Akl had not actually injured it willfully and with malice, and was thereby aware that its fees and costs award did not satisfy the conditions for nondischargeability. But since this Court cannot find any evidence to support Akl's contention, the Court declines to overturn the bankruptcy court's well-reasoned decision.

15

i.  Appellee was not required to foreclose the possibility that Akl's allegations were true or that Akl acted without malice in his previous suits.

Akl first argues that the bankruptcy court erred because VHC failed to foreclose the possibilities that his allegations were true and that he did not act with the malice required for an award to be nondischargeable.  But the bankruptcy court did not need to foreclose those possibilities.  Under section 523(a)(6) of the United States Bankruptcy Code, an award incurred by willful and malicious injury by the debtor is nondischargeable in a Chapter 7 bankruptcy proceeding.  11 U.S.C. § 523(a)(6).  Therefore, the bankruptcy court simply needed to find that appellee had a *colorable basis* for thinking that its fees and costs award in the Arlington Circuit Court was granted based on that court's finding that Akl engaged in willful and malicious actions.

The bankruptcy court found that the mere fact that "an independent trier of fact found Akl's conduct in the Circuit Court sanctionable and was a basis for banning him from filing further suits in that court" provided the lawyers with a good faith factual basis for instituting the lawsuit in the bankruptcy court.  It also provided a good faith basis for "having the bankruptcy court determine whether Akl's actions in those proceedings warranted a finding that the attorneys' fee award was nondischargeable on a broader evidentiary basis than just Judge Kendrick's oral ruling and order."[16]   BR IV at 940.   The bankruptcy court rightfully distinguished between a *colorable* argument and a *winning* argument.  *Id*.  In other words, Judge Kendrick's ruling provided a sufficient basis for appellee to think that sufficient evidence existed

---

16     Akl also argues that appellee knew that it did not meet the standard for nondischargeability because it provided false information to the court and colluded with the Court, but the Court has already rejected Akl's allegations of fraud and conspiracy and will not take them up again here.

on which the bankruptcy court could find that Akl engaged in willful and malicious conduct, even if the court ultimately were to find that he did not. In making that determination, the bankruptcy court did not have to decide whether Akl's allegations against appellee in the Virginia Courts were actually false or whether Akl actually acted with malice when he brought his lawsuits there, so this Court cannot find that the bankruptcy court abused its discretion in failing to foreclose the possibility that Akl's allegations were true or that he did not act with malice.

   ii. The bankruptcy court did not err in ruling that if the complaint were limited solely to Judge Kendrick's ruling, it would still be colorable.

Akl next argues that the bankruptcy court erred in finding that even if the complaint were limited solely to Judge Kendrick's ruling, it would still be colorable; but this Court cannot find that determination to be in error either. In appellee's motion for summary judgment on nondischargeability, appellee cited several cases applying collateral estoppel to state-court sanction determinations made under rules or statutes similar to Va. Code § 8.01-271.1, and thereby finding the award to be nondischargeable without re-litigating the merits of whether there was actual willful and malicious injury.[17] BR I at 182. So it was reasonable for appellee to *argue* that the bankruptcy court should do the same, even though it ultimately did not prevail on that point. Furthermore, the bankruptcy court correctly found that it was reasonable for appellee to have believed, based on the combination of Judge Kendrick's oral statements and the wording

---

[17] Akl argues that "a lawsuit cannot be brought based on what another judge said, but [must be based] on what the plaintiff actually believed . . . ." Appellant's Br. at 19; *see also* Appellant's Supp. Mem. at 4–5. While the Court does not disagree in principle, the doctrine of collateral estoppel requires a court to adopt the final judgment of another court on the same issue. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). So appellee could have reasonably brought its nondischargeability claim based solely on Judge Kendrick's ruling alone. Akl is correct that if appellee had known that Judge Kendrick's ruling was tainted by fraud, then appellee could be sanctioned for filing the nondischargeability complaint; however, this Court already considered and rejected Akl's fraud allegations.

of the written order, that its award of fees and costs was a sanctions award. *See* BR IV at 939–40.

> iii. The bankruptcy court did not err in finding that appellee's stance that in suing others Akl intended to injure VHC does not create a material factual dispute as to appellee's motives for filing its complaint.

Akl next argues that the fact that the hospital sought to have all of the fees it paid declared nondischargeable – including fees incurred defending agents and contractors it was not legally obligated to defend – is evidence of the hospital's bad faith, and a circumstance that creates a factual dispute. *See* Appellant's Br. at 39. The bankruptcy court rejected this contention. It found, and this Court agrees, that the hospital had both ethical and economic reasons for defending those parties, and that the fact that it chose to do so does not taint the complaint filed in the bankruptcy court in any way.[18]

The Court further notes that to the extent that VHC was planning to rely on collateral estoppel as the basis for nondischargeability, it had good faith grounds to ask for all of the fees that Judge Kendrick awarded. Since Judge Kendrick awarded appellee costs and fees for the cases that it paid to defend – even the ones in which it was not a party – the Court cannot find that its request that those fees be nondischargeable indicated bad faith.

---

18    Akl makes a further unavailing argument that the bankruptcy court wrongly raised these arguments *sua sponte*. However, this argument misconstrues the burdens on a motion for summary judgment. Once the moving party sets out the basis for its motion, the non-moving party bears the burden of "designat[ing] specific facts showing there is a genuine issue for trial" in order to defeat the motion. *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Accordingly, it was Akl's burden to present evidence that would establish a material factual dispute, so the bankruptcy court was free to explain why it found Akl's evidence insufficient. In addition, the bankruptcy court found, and this Court agrees, that appellee's general denials of Akl's allegations coupled with several defenses was sufficient, particularly given the length of Akl's pleadings. *See* BR IV at 956; *see also* BR IV at 752 ("[Akl's] efforts to manufacture material disputes by making wild and unsupported accusations that have already been rejected by other courts over and again, must be rejected by the Court."). BR IV at 752.

iv. The bankruptcy court did not err in ruling that there were no inconsistencies in what appellee indicated to be the basis for its action, and that even if there were inconsistencies, they do not create a material factual dispute as to appellee's motives for filing its complaint.

At the oral argument on this appeal, Akl asserted that an alleged change of position was the strongest "evidence" he presented of the hospital's and its attorneys' bad faith. Tr. at 15:5–6. He argued that the hospital's attorneys originally stated in the bankruptcy complaint that the claim that Dr. Akl acted with malice (giving rise to the debt – the attorneys fee award – that should therefore be non-dischargeable) was based on the "entire record." But later, according to Akl, they took the contrary position that they were relying solely on Judge Kendrick's ruling. *See* Appellant's Br. at 29–35 (describing what Akl calls the "empty head/pure heart defense"). At the oral argument, Akl's counsel pointed out that by filing the complaint in the bankruptcy court, which was subject to Federal Rule of Civil Procedure 11, counsel "certified" that the factual contentions had evidentiary support. Tr. at 7:15–23, 8:19–9:7, 18:2–14. But since the entire record included some lawsuits in which VHC allegedly knew that Dr. Akl had not acted with malice, then VHC's attorneys must have acted with malice in predicating their action that record. *Id.* at 29:9–20. And, to follow his logic, the fact that the hospital's attorneys retreated from that allegation shows that they knew it was flawed all along.

The bankruptcy court found that appellee had never actually changed its position regarding the basis for its action. BR IV at 937–38. Moreover, it found that even if appellee had shifted positions, that shift would not lead to a reasonable inference of bad faith. *Id.* at 938. This Court agrees with both determinations.

As to the claimed change of position, the Court notes that from the start, the hospital clearly indicated that Judge Kendrick's statements were the centerpiece of the complaint and that

the hospital was *not* alleging that every single thing Dr. Akl had ever done was activated by
malice.  BR I at 1–4.  The complaint is only three pages long.[19]  It sets out the background facts
– that Dr. Akl had filed eight lawsuits in connection with the medical privileges, *id.* at 1 ¶ 6; that
all seven in Virginia were dismissed and the one in Maryland was still pending, *id.* at 1 ¶ 7; that
Dr. Akl was enjoined from filing any more lawsuits in Virginia, *id.* at 1 ¶ 8; that "in *most* of
these cases," the hospital was forced to defend against baseless and malicious allegations, *id.* at 1
¶ 9; that "in *one* of the actions," the hospital sought to recover the fees it paid for the defense of
"various baseless and harassing lawsuits, *id.* at 1 ¶¶ 10–11; and that the court granted the motion,
*id.* at 1 ¶ 12, making the comments quoted in paragraph 13 (emphasis added).  There is nothing
about the complaint that is not fairly based on the record the attorneys were summarizing at the
time.

In other words, from the moment it filed its action, appellee intended to rely primarily on
Judge Kendrick's ruling, but it was ready to rely on the entire record if its collateral estoppel
argument were rejected.  This is also supported by the Rule 26 disclosures, which Akl cited
before the bankruptcy court and cites again here.  *See* BR IV at 67 (quoting from appellee's Rule
26 disclosure: "This case is predicated upon a multitude of final, non-appealable orders from
various state and federal courts, including a Virginia Circuit Court order and transcript awarding
sanctions in favor of the Hospital and against Dr. Akl"; "This case is predicated upon a multitude
of final, non-appealable orders from various state and federal courts, including a Virginia Circuit
Court order and transcript awarding sanctions in favor of the Hospital and against Dr. Akl.").

In his opposition to the motion for summary judgment as to sanctions filed in the
bankruptcy court, Akl did not identify any evidence of the hospital's alleged "amended

---

19     The fourth page just contains a signature.

position." *See id.* at 51–56.  Now, Akl identifies statements by the hospital's attorneys, made in pleadings and hearings, as his evidence.  First, Akl asserts that counsel for the hospital admitted, after the bankruptcy court denied his motion for summary judgment on nondischargeability, that he needed time to "regroup" before he could identify the underlying evidence that he would rely on at an evidentiary hearing on sanctions.  Akl argues that is proof that counsel had never intended to rely on the entire record.  However, Akl fails to acknowledge that when the attorney made those statements, he had been preparing for a hearing that was to focus solely on the legal issue of collateral estoppel.  So it was reasonable for him to request additional time to review the factual evidence.  The fact that he was unable to identify the factual evidence underlying his case at that exact moment is not the same as a concession that the action had no basis in fact. [20] Similarly, the statement Akl quotes from the hospital's opposition to Akl's motion to defer ruling on defendant's pending motions pending discovery does not show a change in appellee's position. The hospital clearly explained its theory that: "[A] substantial body of case law stands for the proposition that a sanctions judgment can be excepted from discharge in bankruptcy [and] the record supported a finding that Arlington County Circuit Judge Kendrick entered a sanctions judgment against Akl." BR III at 398–99.  This statement makes clear that appellee believed that the entire record supported its action.

Furthermore, even if appellee did shift positions, Akl has presented nothing that indicates that the reason for the shift was bad faith.  The refinement of a litigation position from broad to narrow is not evidence of bad faith and neither is an argument "in the alternative," which is a

---

20      Indeed, the Court agrees with the observation of the bankruptcy court that if statements made by VHC counsel at the sanctions hearing – which occurred three years after the complaint was filed – were inconsistent with the complaint, "[a]t most, it shows that this proceeding has wound on for too long."  BR IV at 939.

formulation that attorneys use frequently in litigation. Accordingly, the Court does not find sufficient grounds to reverse the bankruptcy court's decision.

> v. The bankruptcy court did not err in ruling that a statement in appellee's Rule 26 disclosure stating that "there are no fact issues" does not create a material factual dispute as to appellee's motives for filing its complaint

Akl quotes a statement in appellee's Rule 26 disclosure to the bankruptcy court:

> Because . . . this case involves a question of law, the Hospital believes that there are no fact issues. If, however, the Hospital is required to go beyond the court's above-referenced rulings to prove anything, then the public record alone in this litigation with Dr. Akl would demonstrate that he acted maliciously in prosecuting his claims against the hospital.

Appellant's Br. at 39. The bankruptcy court rightfully rejected Akl's arguments that this statement (1) contradicts itself, and (2) shows that appellee filed the complaint intending to reach only the summary judgment stage because, contrary to its claims, it knew it had no factual evidence. As the bankruptcy court clearly explained, the statement leads to exactly the opposite conclusion: it shows that appellee intended to rely primarily on Judge Kendrick's ruling using its theory of collateral estoppel, but that it believed it could win even if the court determined that it had to look beyond Judge Kendrick's ruling. *See* BR IV at 947. Appellee believed that the totality of the proceedings presented a sufficient basis on which to find that Dr. Akl acted maliciously. The Court cannot find anything in that statement that would give reason to think that it believed otherwise. Nor has Akl presented the Court with any additional evidence that would suggest appellee did not believe that it had sufficient support for its claim, other than his theories of fraud, which the Court has already rejected.

It is entirely unexceptional that litigants would advance the position that a matter can be resolved on legal grounds alone, while being prepared to pursue an action on the merits if summary disposition fails. It is also unremarkable that a party might elect to abandon an action

altogether once it has seen the reasons why the court denied the motion for summary judgment.

There is nothing about the motion for voluntary dismissal in and of itself that suggests that

VHC's attorneys acted in bad faith when they filed their complaint in bankruptcy court to begin

with.

vi. The bankruptcy court did not err in ruling that the Arlington Court's issuance of judgment despite an automatic stay does not create a material factual dispute as to appellee's motives for filing its complaint

Akl next argues that the bankruptcy court should have found a material factual dispute as

to appellee's motives for filing the complaint based on evidence he presented showing that the

Arlington Circuit Court issued a clerical order in the matter there even though the proceedings

had been stayed due to the commencement of Akl's bankruptcy proceedings the day before.  The

bankruptcy court found that the issuance of the order did not reflect bad faith on the part of

VHC's attorneys because Akl made no showing that the clerical order "was signed at the

Hospital's urging."  BR IV at 949.  Akl now argues that the bankruptcy erred because his

conspiracy allegations establish the link between the Arlington court's action and the hospital.

However, since the Court already found that Akl failed to present any evidence that would

support his conclusory allegations of a conspiracy, the Court rejects this argument.

vii. The bankruptcy court did not err in finding that the events that preceded the filing of the adversary proceeding do not create a material factual dispute as to appellee's motives for filing its complaint

Akl also claims that the bankruptcy court should have found a material factual dispute as

to appellee's motives for filing the complaint because he recalls his attorney reporting that VHC

requested his consent to an extension of time before the filing of the nondischargeability

complaint.  Akl insists that the extension request was designed to coerce him to drop his pending

actions by threatening him with legal action.  But a mere request from one attorney to another for

an extension of time is not evidence of bad faith.  In fact, it is required by the local rules.  LCvR

7(m) ("before filing any nondispositive motion in a civil action, counsel shall discuss the

anticipated motion with opposing counsel . . . .").  In addition, Akl provides no evidence of

improper motive for the extension request, and, as the bankruptcy court noted, he provides no

evidence from a person with knowledge that the request was actually made.  *See* BR IV at 950.

Therefore, the Court finds that the bankruptcy court did not err in rejecting this argument.

> viii.  The bankruptcy court did not err in ruling that VHC's failure to submit
> a declaration with the summary judgment motion as to sanctions does
> not create a material factual dispute as to appellee's motives for filing
> its complaint

Before the bankruptcy court, Akl argued that the fact that the hospital did not submit a

declaration denying Akl's allegations with its summary judgment motion was evidence of the

hospital's bad faith.  He now argues that the bankruptcy court erred in rejecting that theory.  But

because Akl misconstrues the burdens on the parties, this Court must again uphold the

bankruptcy court's ruling.

To defeat the hospital's motion for summary judgment, Akl bore the burden of coming

forth with specific evidence showing that the hospital's nondischargeability complaint was filed

in bad faith.  That is why, for example, the Court found that Akl failed to support his assertion

regarding the request for an extension of time between counsel for appellee and his own counsel.

Conversely, to succeed on its motion for summary judgment, the hospital needed only to point

out where Akl failed to meet his burden, an effort that did not require the support of affidavits.[21]

---

21      As the bankruptcy court noted, even if Akl was correct that no hospital agent was willing
to serve as the responsible spokesperson for the hospital's actions, that does not show that the
action was commenced in bad faith.  Given the long list of actions that Akl had filed against
hospital agents, the agents of the hospital were most likely trying to protect them themselves
from becoming the next defendant.

B. <u>Sanctions under the court's inherent authority for the filing of the motion for summary judgment</u>

In challenging the bankruptcy court's ruling that Akl failed to raise any genuine dispute of material fact regarding whether appellee filed their motion for summary judgment in bad faith, Akl merely repeats his argument that appellee's collateral estoppel argument was so "tortuous" as to constitute bad faith.  Appellant's Br. at 44.  This Court has already rejected that argument as to the filing of appellee's complaint, and it rejects it here for the same reasons.

C. <u>Sanctions under 28 U.S.C. Section 1927 for the filing of the motion for summary judgment</u>

28 U.S.C. section 1927 states:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Thus, sanctions should be assessed against an attorney only when he (1) has multiplied the proceedings, and (2) the multiplication of proceedings was unreasonable and vexatious.  "A showing that counsel's behavior has been unreasonable and vexatious requires more than a showing of negligence.  Instead, it requires a showing of deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Healey v. Labgold*, 231 F. Supp. 2d 64, 68 (D.D.C. 2002), citing *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992).  Although there is some controversy over whether section 1927 sanctions require a showing of deliberate intent or whether recklessness is sufficient, the D.C. Circuit requires a showing that the attorney's conduct that was "at least reckless." *Wallace*, 964 F.2d at 1217.

VHC filed a single complaint in the bankruptcy court, moved for summary judgment on the complaint, and then dismissed it.  At the oral argument in this appeal, when the Court asked

counsel for Akl how it could find that the hospital and its counsel thus "multiplied" pleadings unreasonably and vexatiously, he said he had no answer.[22]  Tr. at 16:6–9 (The Court:  "So how does that so multiply the pleadings unreasonably and vexatiously?  Mr. Troy:  Your Honor, I don't have an answer for that question.").  Even when he explained the vexatiousness prong during his rebuttal, counsel could not come up with a single argument that supported a finding that VHC "multiplied" the proceedings.  Tr. at 17:15–18:1.[23]  In the statute, the adverbs "unreasonably" and "vexatiously" modify the verb "multiply," so in the absence of some "multiplication," the statute has no application.[24]

In any event, Akl has also failed to show that the hospital's filings were unreasonable or vexatious.  Akl's only arguments on this point are the same ones that he made in attempting to demonstrate appellee's "bad faith" for inherent authority sanctions.  The court rejects those

---

22    Counsel was clear, however, that Akl was not "conceding" the lack of a statutory basis for sanctions.  Tr. at 16:10–13 ("The Court:  All right.  So are you conceding that the statutory basis for sanctions really doesn't apply?  Mr. Troy:  No, I won't concede it.  I don't have an answer to your question.")

23    Mr. Troy:  . . . [W]ith respect to the multiple and vexatious filings, they shouldn't have brought the case in the first part, so the first one becomes vexatious

The Court:  But how does that – I realize that one times one is one, but how do we get to multiplication –

Mr. Troy:  Well, there were more –

The Court:  – out of filing a complaint –

Mr. Troy:  There were more – that's the argument I'm going to make, Your Honor.

24    Moreover, as counsel for appellee pointed out at the same oral argument, it seems ironic that Akl accuses the hospital of "multiplying" the proceedings when the hospital's motion for summary judgment was docket number thirteen in the early phases of the bankruptcy proceeding, and their motion to voluntarily dismiss the case was docket number twenty eight, yet Akl's motion for sanctions dragged the proceeding on for three years and a total of 212 docket entries (fifteen additional docket entries are attributable to Akl's appeal).  U.S. Bankr. Ct. for the Dist. of Columbia, No. 07-100256.

arguments here for the same reasons that it rejected them earlier. Since Akl presented no evidence that the summary judgment motion was unreasonable or vexatious, the section 1927 sanction standard cannot be satisfied, even under the subjective recklessness standard.

Because the bankruptcy court was correct in finding no genuine disputes of material fact as to Akl's motion for sanctions, it did not abuse its discretion by finding that the motion fails as a matter of law. Its decision denying the sanctions motion will therefore be affirmed.

### ORDER GRANTING VHC'S MOTION FOR PROTECTIVE ORDER AND DENYING AKL'S MOTION TO COMPEL DISCOVERY REGARDING THE SANCTIONS MOTION

#### I.    Standard of Review

An appellate court reviews the trial court's decision whether to permit discovery under an abuse of discretion standard. *See United Presbyterian Church in the USA v. Reagan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984) (A trial court's "discovery rulings are reversed only on a clear showing of abuse, and it is unusual to find abuse of discretion in these matters."); *Porter v. Shah*, 606 F.3d 809, 814 (D.C. Cir. 2010) ("[The plaintiff] was not entitled to discovery or an evidentiary hearing as a matter of right; whether to afford him either one was a matter within the trial court's discretion."); *Ikossi v. Dept. of Navy*, 516 F.3d 1037, 1040 (D.C. Cir. 2008) (denial of discovery is reviewed for abuse of discretion); *see also Indianapolis Colts v. Mayor and City Council of Balt.*, 775 F.2d 177, 183 (7th Cir. 1985) (applying abuse of discretion standard to review district court decision denying discovery in connection with a motion for sanctions under Rule 11 and section 1927).

#### II.    Analysis

The protective order that the bankruptcy court issued stated:

Pursuant to the hearing of January 11, 2011, the motion for a protective order will be granted. The discovery sought in this proceeding will be moot if the court

> grants the motion for summary judgment to be filed by this date. Even if a trial
> proves necessary, the defendant's sanctions motions are satellite litigation that
> ought not be allowed to require great time and effort. Factual inquiries if any are
> needed, can more efficiently be kept within appropriate limits by requiring such
> inquiries to be made at trial.

Order Granting Mot. for Protective Order at 1, *Va. Hosp. Ctr. v. Akl*, No. 07-10026 (Bankr.

D.D.C. Jan. 25, 2011) [Dkt. # 194].[25]   Given:  (1) that Akl sought discovery primarily to

vindicate his theories of fraud and conspiracy, *see* Appellant's Br. at 48–49; Def.'s Opp. to Mot.

for Protective Order/ Mot. to Compel Disc. and to Declare the Peer-Review Process Non-

Privileged at 6–7, 10–11, 13–14, *Va. Hosp. Ctr. v. Akl*, No. 07-10026 (Bankr. D.D.C. Jan 15,

2010) [Dkt. # 156]; (2) that another court had already found those allegations meritless and

barred by the *Rooker-Feldman* doctrine, *see* BR I at 352–90; and (3) that two additional courts

had already held that he was barred from reasserting those allegations by the *Rooker-Feldman*

doctrine, *see id.* at 396–497, 499–530, the bankruptcy court correctly found that the motion for

summary judgment might render the discovery requests moot.  The other information Akl sought

through discovery – information about the peer-review process that led to his discharge from the

hospital – was irrelevant for purposes of his motion for sanctions.  *See* Def.'s Opp. to Mot. for

Protective Order/ Mot. to Compel Disc. and to Declare the Peer-Review Process Non-Privileged

at 15–20, *Va. Hosp. Ctr. v. Akl*, No. 07-10026 (Bankr. D.D.C. Jan. 15, 2010).  Finally, the

---

25    Akl argues that the bankruptcy court relied on an incorrect standard in deciding to grant
the motion for protective order.  According to Akl, the bankruptcy court found that discovery in
connection with satellite litigation should be permitted only in "extraordinary circumstances."
This, Akl argues, is the standard for granting discovery in connection with Rule 11 sanctions, but
not, he argues, for inherent authority sanctions.  Tr. Hearing on Mot. for Protective Order
("Protective Order Tr.") at 62, *Va. Hosp. Ctr. v. Akl*, No. 07-10026 (Bankr. D.D.C. Jan. 11,
2011) [Dkt. # 201].  Although at the hearing on the protective order, the Court did indicate that it
believed "the principles applicable to Rule 11, and also to Section 1927, apply as well to inherent
authority sanctions," this Court will review the reasons that the Court gave for denying discovery
in its written order granting the motion for protective order and denying defendant's motion to
compel discovery.  And it finds those reasons alone provided an appropriate basis for the court to
deny discovery.

bankruptcy court did not block Akl from making relevant factual inquiries, it simply required that those inquiries be made at trial, if the litigation advanced that far, rather than through discovery.

Accordingly, the Court finds that the bankruptcy court did not abuse its discretion in granting the hospital's motion for a protective order and denying Akl's motion to compel discovery and to declare the peer-review process non-privileged.

## CONCLUSION

Because the bankruptcy court did not abuse its discretion by granting appellee's motion for summary judgment as to sanctions, denying appellant's motion for sanctions, granting appellee's motion for protective order, and denying appellant's motion to compel discovery and to declare the peer-review process non-privileged, the Court will affirm all three of the bankruptcy court's rulings.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  May 25, 2012